## STINE v. LEWIS, *Sheriff, et al.*

No. 3186.   Opinion Filed October 15, 1912.

(127 Pac. 396.)

1.   **ANIMALS—Quarantine—Infectious Diseases—Notice.** That portion of section 7, art. 1, c. 3, p. 6, Sess. Laws 1907-08, providing that, after the Board of Agriculture had determined the quarantine lines, the president thereof should at once issue a proclamation setting forth the boundary and location thereof, and "have such proclamation printed and posted on each public road where same may cross such line, and at the courthouse in each county through which such line passes, and no further notice or publication shall be necessary," was repealed by section 218, Comp. Laws 1909, which provided that the said board should "at the earliest practicable date publish once in no less than three newspapers of general circulation within the state, a notice of said proclamation and such publication shall be deemed full and sufficient legal notice of the proclamation of said board."

2.   **APPEAL AND ERROR—Review—Findings of Trial Court.** Where an officer charged with the duty of selecting three newspapers of general circulation for the purpose of an official publication has acted, his selection will be presumed to be valid and the papers to fulfill the requirements of the statute, and where their sufficiency is questioned and a finding of the trial court supports the action of such officer, and the evidence seems reasonably to sustain the finding of such court, the same will not be disturbed on appeal.

3.   **CONSTITUTIONAL LAW—Constitutionality of Act.** The constitutionality of the criminal provisions of section 222, Comp.

Laws 1909, cannot be raised by a party who is not being proceeded against thereunder, but against whom action is taken by officers merely under those portions of the act compelling him to dip his cattle as provided for therein, or subjecting him to the cost and expenses of dipping the same where he refuses, and the service is rendered by the officers.

4. ANIMALS—Infectious Diseases—Constitutional Law. Section 223, Comp. Laws 1909, is not unconstitutional for the reason either that the officers are authorized to act on the belief of the inspector of the Board of Agriculture or because authorized, on the refusal or failure to dip or otherwise treat cattle by one owning or caring for the same on premises believed to be infected, to take the cattle into custody and dip and treat the same, or for the reason that the costs and expenses are assessed to the owner and no preliminary notice and hearing is provided for before the same are made and the cattle held to cover them, as the owner has sufficient notice before the sale to give him opportunity to secure a hearing.

(Syllabus by the Court.)

*Error from District Court, Grady County;*
*Frank M. Bailey, Judge.*

Action by J. H. Stine against John C. Lewis, sheriff, and others. Judgment for defendants, and plaintiff brings error. Affirmed.

*Bond & Melton,* for plaintiff in error:

*Chesley C. Herndon,* for defendants in error.

DUNN, J. This case presents error from the district court of Grady county. The plaintiff in error as plaintiff below began his action against the defendants, who are about to proceed to take action under the quarantine laws of the state with the intent of dipping plaintiff's cattle to eradicate the Texas cattle ticks with which they were believed by them to be infected. The court denied the relief demanded, and plaintiff, after denial of motion for new trial, lodged the cause in this court for review.

Several assignments of error are argued: First, it is contended that the quarantine line described in the proclamation of July 1, 1911, was not proclaimed or established as required by law, in that no notice of the establishment thereof was posted where the public roads cross the same and at the courthouse in Grady county, as provided for by the

Laws of 1907-08, nor was such proclamation published in three newspapers of general circulation within the state of Oklahoma, as provided for by an act of the Legislature of 1909. The foregoing contention naturally divides itself into two parts, due to the statutes out of which it arises.

The First Legislature of the state of Oklahoma in an act which provided generally for the organization of the Board of Agriculture, prescribing the manner of selecting the president and other members thereof, defining their duties, and fixing their compensation, provided as one of the duties of the said board in section 6 thereof (article 1 of chapter 3, p. 6, Sess. Laws 1907-08) that the said board should establish quarantine lines to protect the live stock of the state from contagious and infectious diseases. Under section 7 thereof it was provided that, after the said board had determined the quarantine lines, the president thereof should at once issue a proclamation setting forth the boundary and location thereof, and "have such proclamation printed and posted on each public road where said road may cross such line, and at the courthouse in each county through which such line passes, and no further notice or publication shall be necessary." It is conceded on the part of counsel for defendants and so found by the court that this provision of the statute was not complied with, it being contended that this was not necessary because the act of the Legislature of March 20, 1909 (section 218, Comp. Laws 1909), provided:

"That when the State Board of Agriculture shall have determined quarantine lines and made rules and regulations to maintain and enforce the same to prevent the communicating or conveying of contagious or infectious diseases of live stock within this state, as provided by law, the president of said board shall at once issue his proclamation setting forth and proclaiming the boundary and location of·said quarantine line or lines, the orders, rules and regulations, so prescribed by said board, and the said president of said board shall at the earliest practicable date publish once in no less than three newspapers of general circulation within the state, a notice of said proclamation and such publication shall be deemed full and sufficient legal notice of the proclamation of said board."

It is the contention of counsel for defendant that the act last above quoted superseded the act relied upon by counsel for plaintiff. The section relied upon by counsel for plaintiff was contained in a general act relating, as is seen above, to the duties of the Board of Agriculture, while the section of the act last above quoted is in a special act, subsequently passed, relating to this specific subject here under consideration, and the general rule is that in such cases the provisions of a subsequent special act will control over language contained in a prior general act. The publication of the proclamation was to be deemed full and sufficient legal notice thereof is the language used, and it was not the intention of the Legislature that, in addition thereto in order that the publication might be legal and valid, the provisions of the prior act of 1907-08 should be complied with. Under these circumstances, this contention on the part of counsel for plaintiff cannot be sustained.

This leaves for consideration the question of whether the newspapers in which the proclamation was published were of general circulation within the state, for, as is seen, the act provides that the said president shall publish the proclamation "in no less than three newspapers of general circulation within the state." Counsel for plaintiff contend that the circulation of the papers in which the proclamation was published did not fill the requirements of this statute, in that it was not general. The finding of the court on this proposition was as follows:

"It is further admitted, and the court so finds, that the said proclamation by the duly qualified and acting president of the said Board of Agriculture of the state of Oklahoma was published in three newspapers in the said state of Oklahoma, to wit, the New State Tribune, the Chickasha Daily Express, and the Vinita Leader. It is admitted, and the court so finds, that said publications are newspapers within the meaning of the law. It is further admitted, and the court so finds, that the said New State Tribune is a newspaper of general circulation within the state of Oklahoma. The court further finds that the said Chickasha Daily Express is a newspaper published in the city of Chickasha, Grady county, Okla.; that at the time of the publication of said proclamation said Chickasha Daily Express had 1,660 *bona fide* subscribers; that of said subscribers 1,100 were within the city of Chickasha, 300 in that part of Grady county outside

of the city of Chickasha, and 60 subscribers in the United States outside of the state of Oklahoma, and 200 subscribers in the state of Oklahoma, outside of the city of Chickasha and Grady county. The court further finds that said Chickasha Daily Express had *bona fide* subscribers in the counties of Stephens, Garvin, McClain, Canadian, Oklahoma, Caddo, Comanche, Garfield, Tulsa, and perhaps others; but the court further finds that there were numerous counties within the state of Oklahoma in which said Chickasha Daily Express at the time of the publication of such proclamation had no subscribers. The court further finds that the Vinita Leader is a newspaper published in the city of Vinita, in Craig county, Okla.; that at the time of the publication of the said proclamation of the said State Board of Agriculture said paper had 2,500 *bona fide* subscribers; that of said subscribers 2,000 were located within the county of Craig and the city of Vinita, about 150 subscribers in the United States outside of the state of Oklahoma, and 350 subscribers in the state of Oklahoma outside of the city of Vinita and Craig county, such subscribers being principally within the counties in which the larger towns and cities of the state of Oklahoma are located. The court further finds that there were counties in the state of Oklahoma in which the said Vinita Leader had no circulation. The court is unable to, and does not, find as to what number of counties in the state of Oklahoma in which the said Vinita Leader had no subscribers. It is agreed, and the court so finds, that the said Chickasha Express and Vinita Leader and New State Tribune and each of them circulate generally among all classes, trades, and professions."

And as a matter of law the court found as follows:

"The court further finds that the Chickasha Daily Express and the Vinita Leader and the New State Tribune are three newspapers of general circulation within the state of Oklahoma."

The act makes it the duty of the president of the Board of Agriculture to make publication of the proclamation. This places upon him the duty of selecting the three newspapers in which it should be published. It will be noted that he selected the Chickasha Daily Express, the Vinita Leader, and the New State Tribune, each of which the court finds circulates generally among all classes, trades, and professions. While it is true it is not shown that any one of these papers circulates in every county in the state of Oklahoma, this in our judgment is not conclusive against them being deemed newspapers of general circulation, for

we do not conceive it necessary that, in order that a paper be one of general circulation in the state, it is essential for it to have a circulation in every county in the state. If this requirement were made, we doubt much whether any paper could be found within the state which would meet it, and certainly there would not be three such papers.

It seems to us that the true rule in such a case as this is that where an officer is charged with the duty of selecting a newspaper or newspapers of general circulation for the purpose of publication, and he has acted, and it is not shown that he acted in bad faith or that the circulation of the paper or papers was of such a character as to raise a presumption of bad faith, the papers selected by him will be held *prima facie* to fill the requirements of the statute, and where their sufficiency is questioned, and the finding of the trial court supports the action of the officer, and where on appeal the evidence appears to reasonably sustain the finding of the trial court, the same will not be disturbed.

The next contention of counsel for plaintiff arises out of the action taken by defendants under the following sections of the act of March 20, 1909. It is provided in sections 222 and 223, Comp. Laws 1909, as follows:

"Section 222. It shall be the duty of any person in any county situated above the quarantine line fixed by the State Board of Agriculture, owning or caring for live stock on premises believed by the live stock inspector of the Board of Agriculture to be infected with ticks (*morgaropus annulatus*) to treat such live stock at such times and in such manner as shall be directed by the said live stock inspector, and failure on the part of such owner or caretaker to so treat such live stock as directed by said live stock inspector shall be deemed a misdemeanor and upon conviction of same said party shall be fined in the sum of not less than twenty-five dollars ($25) and not more than five hundred dollars ($500) and costs, or by imprisonment in the county jail for not less than ten (10) days and not more than thirty (30) days or by both such fine and imprisonment.

. "Sec. 223. When any person in any county situated above the state quarantine line fixed by the State Board of Agriculture, fails or refuses to dip or otherwise properly treat his live stock, at such time, and in such manner as directed by the State Board

of Agriculture, or an inspector acting under authority of same, such inspector shall have power to call upon the sheriff of the county in which such cattle are found, whose duty it shall be together with the inspector in charge to dip or treat such live stock in a manner and at such times as said inspector directs and shall keep said cattle in his custody, subject to such quarantine restrictions as he shall receive from the said live stock inspector. No officer who shall seize live stock for such treatment or dipping shall be liable to the owner or owners of such live stock for damages by reason of such taking, or by reason of such dipping or treatment, Provided, that such dipping or treatment has been done in accordance with the direction of the inspector in charge. Before such live stock shall be delivered to owner there shall be paid to the sheriff having such live stock in his custody all costs and expense of taking, detaining, holding and disinfecting, and in case such costs are not paid, said officer shall advertise in a manner as provided by law, in case of taking, caring for and the sale of personal property upon execution, and he may sell such live stock or such portions thereof as may be necessary to pay his costs and expenses of sale, and he shall forthwith pay over to the owner or owners any amount so received in excess of the legal fees and expenses of such officers."

It is the contention of counsel for plaintiff that the foregoing act authorizing the inspector to seize, dip, or treat cattle on premises believed by the live stock inspector to be infected with ticks, and authorizing the sheriff to hold such cattle, advertise and sell the same for the payment of all cost and expense, and without notice to the owner, or opportunity to be heard as to whether or not his premises or property may be infected, and exempting such officers from liability for damages, is in violation of section 7 of article 2 of the Constitution of the state of Oklahoma (section 15, Williams' Ann. Const. of Okla.), and in violation of the fourteenth amendment of the Constitution of the United States.

It is first contended that the act is unconstitutional and void because it provides that the person owning or caring for stock believed by the live stock inspector to be infected with ticks who fails to treat the same in such manner as directed by the live stock inspector may be subjected to a fine of not less than $25, and not more than $500 and costs, or by imprisonment in the county jail for not less than ten days and not more than 30 days, or by both such fine and imprisonment, it being urged that

it is not the duty of the person to treat cattle which may be infected with the ticks or kept on premises which may be infected, but the act requires the treatment of cattle or premises *believed* by the live stock inspector to be infected. In view of the fact, however, that plaintiff is not being proceeded against under the criminal provisions of this act, it is not necessary for us to notice this objection; for, if this particular section of the act were unconstitutional, it is in no wise involved in the proceeding taken in the present case, and the rule as stated by Judge Cooley in his work on Constitutional Limitations (6th Ed.) 196, is that "a court will not listen to an objection made to the constitutionality of an act by a party whose rights it does not affect, and who has therefore no interest in defeating it." See *City of Kansas City et al. v. Union Pacific Ry. Co. et al.*, 59 Kan. 427, 53 Pac. 468, 52 L. R. A. 321; *Dejarnett v. Haynes*, 23 Miss. 600; *Sullivan, etc., v. Berry's Adm'r*, 83 Ky. 198, 4 Am. St. Rep. 147; *Hagar v. Reclamation Dist No. 108*, 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569. It will be time enough to determine the constitutionality of this particular section of the act in this respect when some one is proceeded against charged with the violation thereof. In the present case, should we investigate the questions presented, and finally determine that the section referred to must fall on this account, it would determine no question arising under the facts here presented, for the reason that the sole thing sought to be done in this case is the taking into possession of the defendants, for treatment, the stock of plaintiff on premises believed by the inspector to be infected with ticks, as provided for in section 223, *supra*.

The sole proposition involved in this controversy is one of the constitutional right of this administrative board to exercise the authority sought to be vested in it by this legislative act. The exercise of the power here sought to be conferred is no more nor less than the state acting through a duly constituted agency compelling parties owning or in the possession of property found or believed to be dangerous to the property of others to so treat it as to relieve the danger. It is calling into action the golden rule established by law for the holding and use of property and the enforcement of the doctrine that each must so hold and man-

age his property that it will not injure others. It is manifest that the ascertainment of the conditions under which the remedy will be applied must often be left to some executive or administrative officer or board, and it is equally manifest, if it shall be efficacious, that the proceeding taken, especially where disease is involved, be in a measure summary. If the law provided as contended by counsel for plaintiff it must provide in order to be valid, that the owner is constitutionally entitled to be called into court and to have a trial of the question of whether or not his cattle or premises are infected, long prior to the determination of the action, the damage sought to be prevented would have been accomplished, and the law would often fail in its purpose by the very provisions made for carrying it out. So that the only result which would follow its administration would be the burden and expense of litigation. On the subject of the power of such boards, Mr. McGehee in his work on Due Process of Law, p. 366, says:

"The subject-matter may be such that only a general scheme of policy can with advantage be laid down by the Legislature, and the working out in detail of the policy indicated may be left to the discretion of administrative or executive officials. Sometimes the discretionary duties so intrusted to administrative officials are under the terms of the statute to be performed without granting a hearing to those whose interests are affected. In such cases attacks have been made on the laws as unconstitutional delegations of power to the executive. Where the statute has indicated with all practical definiteness a general scheme of policy and a standard to be followed, leaving for the executive only details which it could not in the nature of things decide, such legislation has uniformly been upheld by the federal Supreme Court."

The case of *Balch v. Glenn et .al.,* 85 Kan. 735, 119 Pac. 67, presents in nearly all of its phases the identical questions raised by counsel in the case at bar. The court had before it a statute of that state creating the entomological commission which provided for the extermination of the San Jose scale and other orchard pests. It was assailed on the ground that it delegated to the commission the power to declare the existence of conditions which called into operation its provisions. In answering the con-

tention made, the court in a very learned and exhaustive opinion by Justice Porter said:

"The statute is not invalid because it delegates to the commission the power to declare the existence of conditions which call into operation the provisions of the statute. The Legislature of the state may declare that to be a nuisance which is detrimental to the health, morals, peace, or welfare of its citizens, and may confer power upon local boards or tribunals to exercise the police power of the state when in the judgment of such tribunals the conditions exist which the Legislature has declared constitute such nuisance. Similar power has been conferred upon cities of the first class to remove certain nuisances, and to tax the costs of the proceedings upon the property where the nuisances are located. Laws 1905, c. 109, sec. 1; Gen. St. 1909, sec. 918. Like authority is conferred upon the live stock sanitary commissioner to determine that domestic cattle or live stock are infested with certain contagious diseases. Laws 1905, c. 495, sec. 5; Gen. St. 1909, sec. 9136. 'The Legislature of the state may declare that a nuisance which is such in fact, and may create a commission with power to determine whether the conditions defined by the act exist.' Cooley, Const. Limitations (7th Ed.) 882, note 1. In determining whether the conditions exist which the Legislature declares constitute a nuisance—that is, whether a particular orchard or some portion thereof, is so infested with insect pests as to require treatment or extermination—the commission exercises some discretion which is in a limited sense judicial, but no more so than the discretion generally exercised in the enforcement of police regulations. It is like the discretion exercised by inspectors of health, food, grain, milk, live stock, by the various state boards and commissions, and by city officers charged with the enforcement of police regulations, which, in order to be effective, often require prompt and summary execution, and which from their nature call for the exercise of more or less discretion in the officers whose duty it is to make them effective. The same objection was urged against the act creating the board of railroad commissioners and acts supplementary thereto. It was held that, although the board is required to exercise judgment and discretion, and to make orders for the regulation and control of railroads and other common carriers, the act does not confer upon the board either executive or judicial powers. *State v. Railway Co.*, 76 Kan. 467, 92 Pac. 606. To the same effect is *Schaake v. Dolley*, 85 Kan. 598, 118 Pac. 80 [37 L. R. A. (N. S.) 598], where it was held that the granting or refusing of an application for a bank charter by the charter board calls for the exer-

cise of discretion, and that the act creating the board is not invalid because it provides that the board shall refuse a bank charter if upon examination it shall determine against the public necessity of the business in the community in which it is sought to establish such bank. The statutes construed in both of the foregoing cases were passed by the Legislature under the police power of the state. The precise question was before the Supreme Court of California in *County of Los Angeles v. Spencer,* 126 Cal. 670, 59 Pac. 202, 77 Am. St. Rep. 217, where a statute almost identical with this was construed, and it was held that: 'A statute designed to protect and promote the horticultural interests of the state, which declares that all places, orchards, etc., infected with the pests mentioned in the statute are public nuisances, and which act is a proper exercise of the police power, is not unconstitutional on the ground that it confers judicial powers upon the horticultural commissioners, where a commissioner, in determining whether any particular place is a nuisance, must necessarily exercise some discretion which, in a strict sense, is judicial in its nature.' "

The contention is also made that the act is unconstitutional because the evidence showed that, in order to dip the cattle as directed by the inspector, they must be gathered, driven to the dipping vat, placed in the pens, and that the damage to the cattle will be about $1.50 per head in addition to the expense incurred. The act in question makes the owner of the cattle liable for this burden of cost and expense, and it is contended it is unconstitutional for the reason that there is no provision made fixing the cost and expense or fees, and no court or tribunal determines the amount thereof, and that plaintiff is given no notice prior to the same becoming a fixed charge upon his cattle, which the statute authorizes the officers to hold and sell to the extent that may be necessary to pay the same. A complete answer to counsel's chief objection is that summary proceedings, such in kind as are authorized by this statute, and the burdening of the property with the cost thereof, have been upheld by the Supreme Court of the United States as well as the highest courts of many of the states. For instance, it is said in McGehee on Due Process of Law, p. 339, with authorities cited to support it, that:

"Quarantine regulations being adopted for the protection of the public against the spread of disease, the requirement that the

vessel examined shall pay for the examination is a part of all systems of quarantine (*Morgan's Steamship Co. v. Louisiana Board of Health,* 118 U. S. 466, [6 Sup. Ct. 1114, 30 L. Ed. 237]), and householders in a city may be required to bear the expense of the transportation of garbage to the place provided for its cremation (*California Reduction Co. v. Sanitary Reduction Works,* 199 U. S. 306 [26 Sup. Ct. 100, 50 L. Ed. 204]). The expense of a compulsory examination of railroad engineers to ascertain whether they are free from color blindness has been held to be properly chargeable against the railroad companies (*Nashville, etc., R. Co. v. Alabama,* 128 U. S. 96 [9 Sup. Ct. 28, 32 L. Ed. 352]). So the expenses of a railroad commission may be charged against the railroad corporations (*Charlotte, etc., R. Co. v. Gibbes,* 142 U. S. 386 [12 Sup. Ct. 255, 35 L. Ed. 1051]); *New York v. Squire,* 145 U. S. 175 [12 Sup. Ct. 880, 36 L. Ed. 666]), of mining inspectors, against the owners of mines (*Consolidated Coal Co. v. Illinois,* 185 U. S. 203, 207 [22 Sup. Ct. 616, 46 L. Ed. 872]), of sanitary improvements, against the owners of the tenement houses in which the improvements are required (*Health Dept. v. Trinity Church,* 145 N. Y. 32 [39 N. E. 833, 27 L. R. A. 710, 45 Am. St. Rep. 579]), of constructing and maintaining such safeguards as are required to protect the public safety in connection with the operation of railroads against the railroad companies (*New York, etc., R. Co. v. Bristol,* 151 U. S. 556 [14 Sup. Ct. 437, 38 L. Ed. 269]; *Chicago, etc., R. Co. v. Nebraska,* 170 U. S. 57 [18 Sup. Ct. 513, 42 L. Ed. 948])."

In short, the owner of the property which offends must bear the burden of removing the offense, and not the public. This would seem to be a just rule.

On the question of notice before the expense becomes a fixed charge against his property, it is to be first observed that the owner in the first instance is to be given an opportunity to dip his cattle or disinfect his property himself, thereby being enabled to keep the expense which he must pay within such limits as he chooses or as the necessities of the case may compel. It is only when he fails or refuses that the board is authorized to take control of his property and to make the expense for which he is held liable. If he elects, on being notified of the amount, he may pay the same and his property will be turned back to him. If he chooses to refuse to pay, then so much of his property is

held as is necessary to pay the costs and expenses of the proceeding and the expenses of the sale; any balance being returned to the owner. Hereunder in our judgment is the only notice, if any is required to be given to the owner, to fulfill the demands of due process of law. The same question was presented in the case of *Balch v. Glenn et al., supra.* In that case the court dealing therewith said:

"It is urged that the act is unconstitutional because it authorizes the cost of the proceeding to be charged against the property of the owner without notice to him or opportunity to question the amount thereof. The act, however, requires notice in writing to be served upon the owner, stating the amount of expense incurred by the commission and notifying him that unless the same be paid within twenty days the same will be taxed against his property. He therefore has notice before any lien is created upon his property, and before it can be taken or sold. Having this notice, he is relegated to his common-law remedies. If he believes the amount charged is greater than it should be, he has ample time to determine what is the proper charge, tender the same to the county clerk, and enjoin in any court of competent jurisdiction the collection of a greater amount. It has been held by the Supreme Court of the United States that the phrase 'due process of law' does not necessarily mean a judicial proceeding. *McMillen v. Anderson,* 95 U. S. 37, 41 [24 L. Ed. 335]. On the other hand, it does not necessarily mean a special tribunal created for the express purpose of hearing the merits of the particular controversy. Where ample notice is provided which gives to the property owner an opportunity to have a hearing in any court of competent jurisdiction before his property is affected, he is afforded due process of law."

So, in the case at bar, if the plaintiff believes the amount of the expenses and costs which he is required to pay are greater than that actually and in good faith incurred, he has notice thereof before any lien may be enforced against his property and before it can be sold. Having this notice, he may be protected against the same by a proper proceeding in a court having jurisdiction thereof.

In the examination of the questions here presented, we have examined many authorities of which no note is taken above, and have also carefully read the evidence, which, although not set

out, in our judgment amply supports the conclusions reached by the trial court.

Finding no error in the record, the judgment of the trial court is therefore affirmed.

TURNER, C. J., and HAYES, WILLIAMS, and KANE, JJ., concur.