[Civ. No. 2067.   Third Appellate District.—February 25, 1920.]

## S. A. DUVALL et al., Appellants, v. C. N. WHITE et al., Respondents.

[1] PLEADING—SUSTAINING OF DEMURRER TO COMPLAINT—FAILURE TO ASK LEAVE TO AMEND—APPEAL.—Plaintiffs are in no position to complain on appeal that the trial court abused its discretion in sustaining a demurrer to their complaint without leave to amend where they did not ask permission to amend, or indicate in any manner how the complaint could be amended to meet the objections raised by the demurrer.

[2] ID.—SUIT FOR INJUNCTION—INTERFERENCE WITH FLOW OF WASTE OIL—ABSENCE OF IRREPARABLE DAMAGE — SUFFICIENCY OF COMPLAINT.—A complaint in a suit to enjoin the defendants from obstructing, diverting, or in any way interfering with the flow of

---

2.   What is irreparable injury within the meaning of the law of injunctions, note, 1 Am. St. Rep. 374.

certain oil and water across lands claimed and occupied by defendants to dams maintained and constructed by plaintiffs, fails to state a cause of action for an injunction where it does not appear therein that the plaintiffs would be irreparably damaged by the threatened acts of defendants, but, to the contrary, shows that plaintiffs will lose oil every day of the value of fifteen dollars.

[3] ID.—MONETARY LOSS—WHEN IRREPARABLE.—Mere monetary loss is not irreparable in the contemplation of the remedy by injunction in the absence of an averment or showing that the parties causing the loss are insolvent or in any manner unable to respond in damages.

[4] OIL—ESCAPE FROM WORKS INTO STREAM—RIGHTS OF RIPARIAN OWNERS.—Where oil escapes from the works of certain oil companies and flows down a watercourse adjoining their lands and thence across other lands, said companies have no such interest in the oil after it leaves their premises that they can bind lower riparian owners by a contract giving third persons the right to collect all the oil flowing down the stream.

[5] TITLE—OCCUPATION OF LAND.—The occupation of land by one person constitutes a sufficient title as against one claiming no interest in the property.

[6] ID.—OCCUPANTS OF LAND AS RIPARIAN OWNERS.—Persons occupying lands adjoining a watercourse under a claim of right must be considered riparian owners, at least as far as persons claiming no interest in such property are concerned.

[7] ADVERSE USER—EVIDENCE—PRESUMPTION.—In the absence of any showing to the contrary, it must be presumed that the use of a stream for the purpose of conveying oil was permissive rather than hostile.

APPEAL from a judgment of the Superior Court of Kern County. Howard A. Peairs, Judge. Affirmed.

The facts are stated in the opinion of the court.

Alfred Siemon for Appellants.

Geo. E. Whitaker and Foster & Barnhart for Respondents.

BURNETT, J.—Respondents have made a fair statement of the case which we substantially adopt. From the complaint it appears that certain oil companies were operating in Kern County, and that waste oil escaped from their works and flowed down a watercourse adjoining their lands. This oil was carried by the water beyond the lands operated by

said companies, across lands claimed and occupied by defendants, then beyond these and across other land until it was carried into a lake known as Buena Vista Lake. In consequence of the danger of the oil contaminating the waters of the lake, the operators constructed a dam below their lands and near the lake for the purpose of preventing said contamination. The operators then orally agreed with the plaintiffs that if they would maintain the dam and construct other works to prevent the oil from flowing into the lake they should be entitled to the waste oil escaping from the operators' property that was saved by means of the dam. The plaintiffs, thereupon, constructed said works for saving said oil. These works were constructed on the lands of the Kern Trading and Oil Company with the consent of that company. Afterward the defendants herein began the construction of works on lands occupied by them lying below the lands of the oil companies and above the lands of the Kern Trading and Oil Company with the alleged intention of diverting the escaping oil ordinarily flowing down on the waters of the stream to the dams of the plaintiffs. The plaintiffs thereupon brought this suit to enjoin the defendants ''from obstructing, diverting or in any way interfering with the flow of said oil and water to plaintiffs herein.'' The defendants demurred on the general ground and on the special grounds that the complaint was uncertain and ambiguous and unintelligible in certain respects and that there was a misjoinder of parties plaintiff. The demurrer was sustained without leave to amend and the appeal is from the judgment entered thereupon.

[1] 1. It is quite apparent that appellants are in no position to complain that the trial court abused its discretion in sustaining the demurrer *without leave to amend*. This follows for the reason that it does not appear that they asked permission to amend, or indicated in any manner how the complaint could be amended so as to meet the objections raised by the demurrer. The rule is well settled in this state, and among the many decisions it is sufficient to specify *Stewart* v. *Douglass*, 148 Cal. 511, [83 Pac. 699]; *Varni* v. *Devoto*, 10 Cal. App. 304, [101 Pac. 934]; *Carley* v. *Vallecita Mining Co.*, 16 Cal. App. 781, [117 Pac. 1037].

[2] 2. It is equally apparent that the complaint fails to state a cause of action for an injunction. It does not appear

therein that plaintiffs would be irreparably damaged by the threatened acts of defendants. To the contrary, the complaint shows that plaintiffs will lose oil every day of the value of fifteen dollars. [3] Mere monetary loss is not ordinarily irreparable in the contemplation of the remedy by injunction. At least, it should not be considered so in the absence of any averment or showing that the parties causing the loss are insolvent or in any manner unable to respond in damages. Nothing in the complaint herein is inconsistent with the view that an action at law would afford a complete remedy for any injury that has been or may be suffered by plaintiffs; and, hence, it does not appear to be a case for the equitable remedy of injunction. In this connection the cases of *Mechanics Foundry* v. *Ryall*, 75 Cal. 601, [17 Pac. 703], and *California etc. Co.* v. *Union etc. Co.*, 122 Cal. 641, [55 Pac. 591], are quite instructive.

[4] 3. Moreover, as to respondents, said agreement between plaintiffs and the oil companies is entirely ineffective and inoperative. Otherwise, the situation would be this, that plaintiffs would have a right to impound all the oil flowing down the stream miles below the works of the operatives, and thereby prevent any intervening land owner from diverting a single drop of water from the stream for any purpose, as any diversion of the water, however small, would deprive the purchaser of the floating oil of a portion of his right. It would necessarily follow, as pointed out by respondents, "that the stream must continue to flow in the same manner for time immemorial in order that the plaintiffs may collect their oil, and that no intermediate owner can divert it from its natural channel for fear of depriving the plaintiffs of their oil." It is manifest that the riparian rights of those dwelling upon a natural watercourse cannot be so easily destroyed by an agreement between third parties. If the intermediate riparian owners have the right—as must be conceded—to divert the water for domestic purposes, it would be absurd, of course, to contend that they must separate from it the oil and permit the latter to flow on down the stream. The two elements are inseparable and the right to the use of one carries the other as an incident. The foregoing is stated to indicate to what unreasonable results the contention of appellants would lead, although in the case before us there is no allegation as to the diversion and appropriation of the water but only of the oil.

We are satisfied that the operators had no such interest in the oil after it left their premises that they could bind intervening land owners by such a contract as the one involved herein. The true position, as we conceive it, is that after the oil was carried beyond said premises it became what may be designated abandoned property and it was entirely beyond the control of said operators. While the oil remained on their land they could have impounded it or authorized another to do so, but having been allowed to escape, it became subject to disposition with the water. In 18 R. C. L. 1205, it is said: "Both petroleum and gas, as long as they remain in the ground, are a part of the realty. They belong to the owner of the land and are a part of it as long as they are on it, or in it, or subject to his control. When they escape and go into other hands or come under another's control, the title of the former owner is gone."

A large number of cases is cited in support of the text including decisions from the United States supreme court, and they justify said statement of the rule.

We may add that other authorities affirm the same doctrine, but they need not be specifically noticed.

Appellants, in support of their contention, cite *Dougherty v. Creary,* 30 Cal. 290, [89 Am. Dec. 116], but it is not inconsistent with the position of respondents herein. That case involved a controversy among the tenants in common and related to the diversion on their own property of water and gold-bearing earth conducted by flumes from the mining claim. The rights of third parties were not litigated, but the diversion was made, as found by the court, for the benefit of the owners of the said mining claim. It is true, though, that the court said: "So long as the miners of the basin and the Blue Point Mining Company abandoned the water and tailings which passed from their mining grounds, the Cheek and Ackley Flume Company had the right to take and appropriate the same to its own use and upon the passage of the water and earth through that flume, the Side Hill Flume had the right to take and appropriate what so passed through the Cheek and Ackley Flume to its own use." This is in line with the contention of respondents that when the oil left the land of the operators it became abandoned property. However, in the Dougherty case the court proceeded to state that the owner need not continue to abandon the

"tailings," but he may change his purpose and reclaim it himself if he chooses. But this must mean that he may reclaim it while it is under his control, that is, before it has passed beyond his possession. So in the case at bar, no doubt the operators could impound the oil on their own property and thereby prevent its diversion by a third party, to the extent at least that it did not interfere with the riparian rights of others, but the case is different where they claim the right to recover it after it has escaped from their own possession and been appropriated by lower riparian owners.

[5] 4. There is some contention that the claim of respondents is based upon an unlawful occupation of government land and that they are not even riparian owners. As to the first of these contentions it is clear that plaintiffs are in no position to raise the point. They claim no interest in the land and the occupancy of the defendants constitutes sufficient title as against one claiming no interest whatever in the property. The character of the possession of defendants is a matter to be settled between them and the government. (*Woodbury* v. *Dorman,* 15 Minn. 338; *McMillen* v. *Gerstle,* 19 Colo. 98, [34 Pac. 681]; *Tidwell* v. *Chiricahua Cattle Co.,* 5 Ariz. 352, [53 Pac. 192].)

[6] Occupying, under a claim of right, lands adjoining said watercourses, defendants must also be considered riparian owners, at least as far as plaintiffs are concerned.

[7] 5. There is no merit in the claim as to user. That the streams may have been used for five years for the purpose of conveying the oil can avail plaintiffs nothing. There is no allegation of any of the elements that characterize a use as *adverse.* We must presume that said use was permissive rather than hostile in the absence of any showing to the contrary.

We think there is no substantial merit in the appeal and the judgment is affirmed.

Ellison, P. J., *pro tem.*, and Hart J., concurred.