Ronald W. **FROST** et al., Appellants,

v.

**PONCA CITY**, Oklahoma, Appellee.

No. 47326.

Supreme Court of Oklahoma.

Oct. 21, 1975.

Cohen & Pluess, Eagleton, Nicholson & Pate, Oklahoma City, for Ronald W. Frost and Richard R. Klinger.

Don Manners, Oklahoma City, for Hayden Sullivan.

Marland Johnson, City Atty., Ponca City, Maurice H. Merrill, Norman, for appellee.

BERRY, Justice:

Plaintiffs, owners of property in two additions, Southside and Boggess, located within Ponca City, Oklahoma, filed a class action against the City. They requested an accounting from City for the total sum received by City from the sale of certain hydrocarbons.

The parties stipulated refined hydrocarbons were and are still located in a shallow sand underlying parts of the two additions. Gaseous vapors arose from the hydrocarbons. The residents of area demanded City take action to protect residents in case of explosion. City, acting pursuant to its police power, refused to allow plaintiffs, and others similarly situated, to drill wells on their property. City then drilled 26 wells in the area and took other steps to produce, transport and sell the hydrocarbons. City kept all funds received from such hydrocarbons without accounting to plaintiffs. City has continued operations to prevent recurrence of hazardous condition. Continued safety of persons and property in the area require future operation of the wells, collection in tank trucks of refined hydrocarbons from collecting tanks, and skimming of sewer line ditches.

There is nothing in record concerning source of the refined hydrocarbons, but plaintiffs' brief implies such substances escaped from nearby refineries.

The record indicates that some of City's wells are located upon property which belongs to some plaintiffs.

The trial court found (1) City's ordinance preventing plaintiffs from drilling within the City limits, and City's refusal to grant variance to this ordinance, was a valid exercise of City's police power, (2) City under its police power had the right and obligation to remove the existing dangerous conditions in order to protect the public health and safety of the residents and property in the area, and (3) because of the valid exercise of City's police power, and the rule of capture as it exists in Oklahoma, plaintiffs and all others similarly situated have no property interests in the hydrocarbons that have been removed.

The Court of Appeals, Div. 2, reversed and remanded with directions to proceed with an accounting. The City petitions for certiorari.

On appeal the parties agree City, in exercise of its police power, had authority to remove the hydrocarbons. The disagreement centers around plaintiffs' rights in the hydrocarbons after they were removed by City.

■ The parties agree that under the "law of capture" which obtains in Oklahoma, a landowner does not own migratory substances underlying his land, but has an exclusive right to drill for, produce, or otherwise gain possession of such substances, subject only to restrictions and regulations pursuant to police power. *Edwards v. Lachman*, Okl., 534 P.2d 670; *Carter Oil Co. v. State*, 205 Okl. 541, 240 P.2d 787; *Gruger v. Phillips Pet. Co.*, 192 Okl. 259, 135 P.2d 485. A landowner does not acquire title, or absolute ownership of the migratory substances, until the substances are reduced to actual possession by being brought to the surface and then controlled. *Wright v. Carter Oil Co.*, 97 Okl. 46, 223 P. 835; *Williams v. Phillips Pet. Co.*, Okl., 406 P.2d 474.

The parties agree the refined hydrocarbons were subject to capture, *West Ed-mond Salt Water Disposal Ass'n v. Rosencrans*, 204 Okl. 9, 226 P.2d 965, and that plaintiffs had the right to capture refined hydrocarbons underlying their lands subject only to existing police power regulations. They also agree that City, in exercise of its police power, adopted a valid Charter provision prohibiting plaintiffs from drilling wells or otherwise capturing hydrocarbons under their land.

City contends this Charter provision destroyed plaintiffs' right to capture hydrocarbons underlying their property, and since plaintiffs have no right to capture the hydrocarbons, they have no claim to proceeds from production by City.

Plaintiffs contend the police power is directed to restriction, regulations to prevent, and removal of hazardous conditions, and City, in exercise of police power, had authority to prohibit plaintiffs from removing the hydrocarbons, and authority to remove hydrocarbons itself.

■ However, plaintiffs contend City, in removing the hydrocarbons, was exercising the landowners' right to capture, and landowners became owners of the hydrocarbons after they were captured by City. They contend City's continued possession of the captured substances exceeds the bounds of the police power, and City's failure to account to them for proceeds of the hydrocarbons deprives them of property without due process of law and contravenes Art. II, § 24, Okla.Const., and the 14th Amendment of the U. S. Constitution.

■ We agree with plaintiffs. We have recognized mineral owner's right to reduce minerals to possession is a valuable property right. *Wright v. Carter Oil Co.*, supra. The state, or city, acting pursuant to its police power, may establish regulations which have "the effect of regulating or abrogating in a measure the law of capture." *Gruger v. Phillips Pet. Co.*, supra. However, these regulations may only restrict the landowner's right to capture minerals underlying his property, and may not authorize third persons to enter upon his

premises and capture minerals underlying same without compensating landowner. To authorize a third person to enter upon a landowner's premises and exercise the right to capture minerals underlying the premises would constitute a taking of landowner's property. In *Phillips Petroleum Co. v. Corporation Commission*, Okl., 312 P.2d 916, we quoted from 29 C.J.S. Eminent Domain § 6, as follows:

> "* * * in the exercise of eminent domain private property is taken for public use and the owner is invariably entitled to compensation, while the police power is usually exerted merely to regulate the use and enjoyment of property by the owner, or, if he is deprived of his property outright, it is not taken for public use, but rather destroyed in order to promote the general welfare * * *"

Therefore, we conclude City's regulation prohibiting plaintiffs from drilling and producing the hydrocarbons did not destroy plaintiffs' right to capture said hydrocarbons, but merely restricted such right. The hydrocarbons underlying the lands created a dangerous situation, and City, in exercise of its police power, was authorized to remove them in order to protect public safety. See *Cummings v. Lobsitz*, 42 Okl. 704, 142 P. 993. However, in so doing City was merely exercising the landowners' right to capture the hydrocarbons. When City acquired possession of the hydrocarbons, the landowners' ownership of the substances became absolute. *Wright v. Carter Oil Co.*, supra. We find no authority which permits City to acquire ownership of the hydrocarbons it removed from landowners' premises.

There is authority to effect city may in exercise of police power destroy, or require destruction of, landowner's property, even though it may have some value, if public health and safety requires the property to be destroyed. *California Reduction Co. v. Sanitary Reduction Works*, 199 U.S. 306, 26 S.Ct. 100, 50 L.Ed. 204; *Cummings v. Lobsitz*, supra. Here City did not destroy landowners' property, but sold it.

In certain circumstances the legislature may, in exercise of police power, provide for forfeiture and sale of contraband or property used in commission of crime. 37 O.S.1971 § 548; Annotation, Forfeiture of Auto Used in Narcotics Crime, 50 A.L.R.3d 172. However, the hydrocarbons were not contraband, and were not used in commission of a crime.

We conclude landowners are entitled to an accounting.

City further contends most plaintiffs had no wells upon their property. It contends persons upon whose property no wells were located are not entitled to share in the production because the various properties were never consolidated, communitized, unitized or pooled. It also asserts some hydrocarbons were produced from wells and other facilities located upon property which was not within the subdivisions, and plaintiffs should not be entitled to share proceeds from these hydrocarbons. It also contends it properly raised claim plaintiffs' cause of action was barred by statute of limitations, but trial court did not pass upon this issue because it determined plaintiffs had no right of recovery.

We note the trial court has not ruled upon these issues and may consider them at the new trial.

We further note City incurred various expenses in collecting, transporting and selling the hydrocarbons. The parties entered the following stipulation with regard to these expenditures:

> "It is agreed that the question of amount due, should it be determined the defendant is liable, shall be reserved until the accounting by the City * * * is made and the sum, if any, to which the plaintiff and those similarly situated are entitled is determined; that in the determination of this question, the amount of the production of hydrocarbons from all sources, the cost of all operations engaged in by the defendant in the past and future exercise of police power in the production, preserving and marketing of all products, and all costs

incurred by defendant as the result of the escape of said hydrocarbons shall be taken into consideration to the extent that principles of law require."

Nevertheless, on appeal both parties present various arguments concerning City's right to allowance for expenses at the accounting.

Plaintiffs' position is that the only cost which might be assessed against them is the license or regulatory fee required of persons in the City handling volatile substances such as gasoline or hydrocarbons.

City contends that if there is to be an accounting, it is entitled to credit for all costs incurred in the operation. It further contends any order directing an accounting would be premature. In this regard it contends parties stipulated future operation of the wells, mechanical collection in tank trucks, and skimming from sewer line ditches will be necessary for continued safety of persons and property. It contends these activities will involve costs but future revenues will be infinitesimal. It contends it should be allowed to set off future costs against past revenues, and that it should not be required to account until all need for future cautionary action has come to an end, and the necessary cost can be ascertained. It submits there is no evidence concerning when need for cautionary action will come to an end.

Plaintiffs concede City was authorized to drill wells and produce the hydrocarbons. There is no evidence indicating plaintiffs had facilities for storing the hydrocarbon products after City removed them, and there is no evidence indicating plaintiffs requested City of relinquish possession of hydrocarbons to them. Under these circumstances we conclude City was justified in producing and selling the hydrocarbons.

If plaintiffs had conducted the operation, they would have incurred expenses for producing, transporting and selling the hydrocarbons, and would have incurred expense to prevent recurrence of the hazardous situation. To deny City credit for these expenditures would be unjust to other taxpayers in City. They would be required to bear expense of all operations to remove hydrocarbons from beneath plaintiffs' property, while plaintiffs would receive gross receipts from such operations. The other taxpayers would also be required to bear expense of future operations to protect plaintiffs' property from recurrence of hazardous condition.

City cites various authorities to the effect cost of abating threats to the public health, safety and welfare may be charged entirely to the person who, by his conduct, or the condition of his property, has brought about the occasion for exercise of the police power. *Stine v. Lewis*, 33 Okl. 609, 127 P. 396; *Chicago R. I. & P. Ry. Co. v. Taylor*, 79 Okl. 142, 192 P. 349; *Sproul v. State Tax Comm.*, 234 Or. 579, 383 P.2d 754.

Further, we have recognized the doctrine of contracts implied in law. In *Anderson v. Copeland*, Okl., 378 P.2d 1006, we stated:

"* * * contracts implied by law * * * are a class of obligations which are imposed or created by law without regard to the assent of the party bound, on the ground that they are dictated by reason and justice * * *"

See also *Berry v. Barbour*, Okl., 279 P.2d 335.

We conclude reason and justice dictate that the law imply an obligation on part of plaintiffs to allow City to retain a portion of the proceeds to reimburse City for expenditures made to protect plaintiffs' property. City should be allowed to retain an amount sufficient to reimburse it for all reasonable expenses incurred by City in collecting, transporting, and selling the hydrocarbons, and a reasonable amount to reimburse City for future expenditures it will incur for purpose of preventing recurrence of the hazardous situation.

Certiorari granted. The opinion of the Court of Appeals is vacated. The judgment of trial court is reversed and remanded with directions to proceed in accordance with views enunciated herein.

WILLIAMS, C. J., HODGES, V. C. J., and DAVISON, IRWIN, LAVENDER, SIMMS and DOOLIN, JJ., concur.

BARNES, J., not participating.