CHAMPLIN EXPLORATION, INC., Appellant,

v.

WESTERN BRIDGE AND STEEL CO., INC., an Oklahoma Corporation, Dosan Refining Co., an Oklahoma Corporation, and Champlin Petroleum Company, a Delaware Corporation, and Jim Peckham, Appellees.

No. 51326.

Supreme Court of Oklahoma.

July 17, 1979.

Harold J. Singer, Enid, for appellant.

Douglas C. McKeever, McKeever, Glasser, Conrad & Herlihy, Enid, for appellee, Champlin Petroleum Co.

DOOLIN, Justice:

We are called upon to decide, in this case, if a refiner loses title to refined hydrocarbons when they escape from him into the ground. To put it another way; are refined hydrocarbons subject to the law of capture when they escape into the ground?

We hold that an owner of refined hydrocarbons does not, ipso facto, lose title to escaped hydrocarbons unless it is shown by competent evidence that he has abandoned same.

Champlin Exploration, Inc.[1] (unit operator) under a valid corporation commission order and operating agreement, brought suit against Champlin Petroleum Company (refiner) and other defendants who owned surface or mineral estates in the unit area; Western Bridge & Steel Company, Inc., Dosan Refining Company and Jim Peckham.

When the refiner discovered losses and leakage was occurring from its refinery, located within the unit area, it took immediate steps to recover what turned out to be refined hydrocarbons. Refiner caused trenches to be dug on its premises to recover and trap the escaped substances. Refiner pumped out the trenches and returned the hydrocarbons to its possession. The

---

1. Despite the similarity in names the record indicates that Champlin Exploration, Inc. and Champlin Petroleum Co. are separate legal entities.

area of reclamation was subject to the operating agreement within the unit area.

Peckham, President of Western Bridge & Steel Company, Inc., as an individual and acting on his own, had for some time been collecting refined hydrocarbons in trenches or holes upon Western's premises which were adjacent to the refiner's premises. Western owned only the surface to these and adjoining premises, within the unit area. Peckham sold the hydrocarbons to Dosan Refining Company.

Unit operator brought suit seeking: (1) a declaratory judgment as to ownership of the escaped substances, and (2) an accounting against all defendants.

The evidence in this matter is not at variance. Both Peckham and the refiner took refined hydrocarbons from shallow holes or trenches from 6 feet deep to 18 or 20 feet deep. Natural forces such as gravity and water pressures caused the escaped hydrocarbons to collect in such areas where they were pumped into trucks or tanks. The substances had migrated a few hundred feet at most, from the leaking pipes or conduits installed by the refiner. The evidence disclosed the leaks have been repaired and for all intents and purposes the recovery by refiner and Peckham has ceased.

Trial court entered judgment for the defendant refiner and ordered case dismissed as to other defendants, holding the refiner was the owner of the escaped substances.[2]

We affirm.

Unit operator relies primarily on our holding in *Frost v. Ponca City*, 541 P.2d 1321 (Okl.1975) to support its theory of error. Its contention basically is that once refined hydrocarbons escape into the ground, the escaped substance is again subject to the law of capture by virtue of having returned to the forces of nature under the surface of the earth.

In *Frost*, refined hydrocarbons had apparently seeped into and under property located within the city limits. The fumes from the seepage were creating a nuisance. The defendant city, pursuant to its police power, prohibited the plaintiff and any others, similarly situated, from drilling within the city by a city ordinance. The city then drilled wells, sold the recovered substances and kept the proceeds. Plaintiff, as owner of a mineral estate, brought a class action to recover the amount of hydrocarbons taken by the city, and this court found for plaintiff, allowing defendant credit for its expenses in producing, transporting and selling the hydrocarbons. In its brief, filed in the instant case, unit operator argues *Frost* holds that hydrocarbons which escape into the ground, even though previously refined and processed, were ipso facto, subject to the law of capture.

Refiner does not attack our holding in *Frost* but argues it has narrow or limited application. It points out that in the *Frost* case the escaped refined hydrocarbons had been abandoned for no one claimed previous title or ownership.[3]

■ Ordinarily a landowner, lessee or unit operator who brings hydrocarbons to the surface and reduces them to actual possession acquires absolute ownership of the substances, subject to the operation agreement or lease,[4] if any.

■ In *Crosson v. Lion Oil & Refining Co.*, 169 Ark. 561, 275 S.W. 899, 42 A.L.R.

2. Refiner and unit operator had agreed at time of trial that the unit operator must prevail in the declaratory judgment action to be entitled to an accounting.

3. Specifically, the court in *Frost* pointed out that there was nothing in the record concerning the source of the refined hydrocarbons, 541

P.2d 1321, 1322. The court did recognize and the plaintiff's brief implied that the substances did escape from nearby refineries.

4. *Carpenter v. Shaw*, 134 Okl. 29, 272 P. 393 (1928); *Wright v. Carter Oil Co.*, 97 Okl. 46, 223 P. 835 (1923); *Williams v. Phillips Petroleum Co.*, 406 P.2d 474 (Okl.1965).

574 (1925)[5] the Supreme Court of Arkansas turned the recovery of oil which had escaped from a pipe line of an owner upon the principles or theories of lost or abandoned properties. In *Crosson*, the owner who had reduced crude oil to his possession was allowed to recover the crude from a neighbor who had impounded it. In essence that court held title to lost property does not vest automatically in its finder or capturer for our purposes; there must have been an abandonment by its previous owner. Thus the law of capture in oil and as to chattels previously reduced to possession by an owner is conditioned on the well known and existing theory of abandonment of lost property. Professor Eugene Kuntz,[6] in his definitive work on oil and gas, states the principle as follows: "If oil should escape from a well, tank, or pipeline, the owner may lose possession but he retains title unless the oil is abandoned." We can see no reason why his conclusions should not apply to refined hydrocarbons where problems of identity and other applications of the laws of evidence are comparatively simple and easy to apply.[7]

■ The evidence in this case is clear and convincing; not only did the refiner capture his lost property, it was so pure and refined that it could be blended back into the marketable stock of the company with little or no treatment. We note also, refiner's operation to recover his lost property was confined to his premises; there was no abandonment under these circumstances.

■ It is uniformly held, once oil and gas is extracted from the earth, it becomes tangible, personal property and subject to absolute ownership.[8]

We conclude that the refiner had not abandoned his refined hydrocarbons; there is no evidence of an intent to abandon by refiner.

JUDGMENT AFFIRMED.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, HODGES, SIMMS, HARGRAVE and OPALA, JJ., concur.

5. See case annotated at 42 A.L.R. 877; *Humphreys Oil Co. v. Liles*, 277 S.W. 100 (Tex. 1925); *Caldwell-Guadeloupe Pickup Stations v. Gregg*, 276 S.W. 342 (Tex.Civ.App.1925); *Standard Oil Co. v. Kinnebrew*, 155 La. 1009, 99 So. 802 (1928) and *Duval v. White*, 46 Cal.App. 305, 189 P. 324 (1920).

6. Dean Emertius and George L. Cross, Research Professor of Law at the University of Oklahoma; see Kuntz, the Law of Oil and Gas at § 2.5. Previous text writers seem to agree; see V. Kulp, Oil and Gas Rights §§ 10.5, 10.59 (1954).

7. In a recent student note found 29 Okl. Law Review 987, 988 (1976) the contributor suggests the viability and propriety of the application of the law of abandonment.

8. See Kuntz, the Law of Oil and Gas § 2.5 and citations under footnote 2 of that work; *Frost v. Ponca City*, 541 P.2d 1321, 1323.