BIGHEART PIPELINE CORPORA-TION, an Oklahoma corporation, Plaintiff,

v.

The UNITED STATES of America (INTERNAL REVENUE SERVICE), Defendant–Appellee,

and

Core Energy, Inc., Defendant–Appellant,

and

Homestead Oil Company, Inc.; HIS Industries, Inc.; Duncan Petroleum; Delores Brightwell; Herman Wilson; and Charles Duggar, Defendants.

No. 84–2598.

United States Court of Appeals, Tenth Circuit.

Dec. 22, 1987.

Robert T. Mowrey, of Locke, Purnell, Boren, Laney & Neely, Dallas, Tex. (Lisa B. Graivier and John V. Schrier, of Locke, Purnell, Boren, Laney & Neely, Dallas, Tex., and Andrew R. Turner and Tony M. Davis, of Conner & Winters, Tulsa, Okl., with him, on the brief), for defendant-appellant Core Energy, Inc.

Richard J. Driscoll, Tax Div., Dept. of Justice, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Washington, D.C., Michael L. Paup and William S. Estabrook, Tax Div., Dept. of Justice, Washington, D.C., and Layn R. Phillips, U.S. Atty., Tulsa, Okl., of counsel, with him on the brief), for defendant-appellee U.S.

Before McKAY, SEYMOUR and BALDOCK, Circuit Judges.

SEYMOUR, Circuit Judge.

Bigheart Pipeline Corporation instituted this interpleader action to determine who was entitled to the money Bigheart owed for the oil it purchased from Core Energy, Inc. The United States claimed a prior interest in the proceeds arising from a federal tax lien it held against the Homestead Oil Company, Inc.. This lien had attached to an undeveloped oil and gas lease that Homestead sold to Core Energy. The issue is whether the federal tax lien attaches to the proceeds from the sale of oil from a well that was drilled after Homestead transferred the lease. The district court found in favor of the United States. *Bigheart Pipeline Corp. v. United States*, 600 F.Supp. 50 (N.D.Okla.1984). We affirm.

## I.

Homestead Oil Co. failed to pay federal taxes totaling in excess of $200,000. In November 1982, Homestead assigned to Core Energy a 78.125% interest in an undeveloped oil and gas lease. Core Energy did not file the assignment with the county clerk until January 1983. In the meantime, the United States duly filed Notices of Federal Tax Lien against all property or rights to property of Homestead.

The Internal Revenue Code provides:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

26 U.S.C. § 6321 (1982). Significantly, the Code also provides that "the lien ... imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability ... is satisfied or becomes unenforceable by reason of lapse of time." *Id.* § 6322.

State law determines what constitutes a property interest or right to property to which a federal tax lien may attach. *See In re Carlson*, 580 F.2d 1365, 1368–69 (10th Cir.1978). In Oklahoma, an oil and gas lease is a valuable property right. *City of Wewoka v. Magnolia Petroleum Co.*, 151 Okl. 177, 3 P.2d 182, 183 (1931). Core Energy concedes that the tax lien attached to the leasehold. In spite of the federal tax lien, Core Energy commenced drilling and began to produce oil. It sold its first six months of production to Bigheart Pipeline Corporation. In August 1983, the Internal Revenue Service served Notice of Levy upon Bigheart with respect to the purchase price of the oil owed to Core Energy. Bigheart then commenced this action to determine whom to pay.

Except for certain protected parties, the United States has priority over other claimants to the same property. Core Energy could have become a protected "purchaser" under 26 U.S.C. § 6323(h)(6) (1982). The parties agree, however, that by failing to file the assignment of record until after the government filed the Notice of Tax Lien, Core Energy did not attain protected purchaser status. In an effort to avoid the consequences of its failure to record its

purchase of the lease, Core Energy argues that the lien does not attach to the oil or its proceeds, which were produced entirely through its own efforts and expense after it purchased the leasehold interest from Homestead. It points out that an oil and gas lease only entitles the holder to drill for oil. The leaseholder does not acquire title to the oil in the ground until he takes actual possession of it. *See Frost v. Ponca City*, 541 P.2d 1321, 1323 (Okla.1975). According to Core Energy, therefore, the leaseholder has only a contingent interest in the oil until it is brought to the surface. Since Homestead never took possession of the oil, it never owned it. Hence, Core Energy maintains, the lien could not have attached to the oil itself, because Homestead's interest in the oil was too contingent to allow a tax lien to attach.

The district court held that a federal tax lien does attach to such a contingent interest. It therefore found that the government has priority over Core Energy to the proceeds from the oil sold.

## II.

■ The question of whether a tax lien attaches to a particular contingent interest is often complex. In this case, however, we need not linger over that question because Oklahoma law provides that a lien can attach to the proceeds from oil produced from the lease. *See* Okla.Stat.Ann. tit.

42 § 144 (West 1979).[1] That interest is therefore "property" or a "right to property" within the meaning of 26 U.S.C. § 6321.

Both parties agree that the tax lien attached to the mineral rights lease. The oil and gas lease in this case entitled Homestead to drill for, produce, and sell whatever oil could be captured under the land subject to the lease. Had Homestead drilled and produced oil, section 144 provides that certain defined liens that were attached to the leasehold would then attach to the proceeds gained from selling the oil.[2] *Id.* Thus, for example, under the statute a geologist who performs services for the owner of an oil and gas lease would have a lien upon the leasehold and upon the proceeds from the sale of oil or gas subsequently produced from the lease. The transfer of the leasehold between the time the lien attaches and the time the oil is produced does not change this result because the statute provides that the lien follows the property. *See* note 2 supra. As the Court held in *United States v. Bess*, 357 U.S. 51, 57, 78 S.Ct. 1054, 1058, 2 L.Ed.2d 1135 (1958), "[t]he transfer of property subsequent to the attachment of the lien does not affect the lien, for 'it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere....' " (quoting *Burton v. Smith*, 38 U.S. (13 Pet.) 462, 483, 10 L.Ed. 248 (1839)). *See also United*

**1.** Unfortunately, this statute was not brought to the district court's attention, and it therefore did not rely on it in reaching its conclusion that the IRS lien attached to the proceeds.

**2.** This statute provides in pertinent part:

"Any person, corporation, or copartnership who shall, under contract, expressed or implied, with the owner of any leasehold for oil and gas purposes ... perform labor or services, including written contracts for the services of a geologist or petroleum engineer, or furnish material, machinery, and oil well supplies used in the digging, drilling, torpedoing, completing, operating, or repairing of any oil or gas well, or who shall furnish any oil or gas well supplies, or perform any labor in constructing or putting together any of the machinery used in drilling, torpedoing, operating, completing, or repairing of any gas well, or perform any labor upon any oil well supplies, tools, and other articles used in dig-

ging, drilling, torpedoing, operating, completing, or repairing any oil or gas well, *shall have a lien upon the whole of such leasehold* ..., the buildings and appurtenances, *the proceeds from the sale of oil or gas produced therefrom* inuring to the working interest.... Such lien shall be preferred to all other liens or encumbrances which may attach to or upon said leasehold for gas and oil purposes ..., *and such lien shall follow said property and each and every part thereof, and be enforceable against the said property wherever the same may be found;* and compliance with the provisions of this Article shall constitute constructive notice of the lien claimant's lien to all purchasers and encumbrancers of said property or any part thereof, subsequent to the date of the furnishing of the first item of material or the date of the performance of the first labor or services."

Okla.Stat.Ann. tit. 42 § 144 (emphasis added).

*States v. Bank of Celina,* 721 F.2d 163, 169 (6th Cir.1983).

Because the proceeds of the sale of oil is a "right to property" to which a lien can attach under Oklahoma law, the district court correctly concluded that a federal tax lien attaches to such property under 26 U.S.C. § 6321. A contrary decision would impermissibly frustrate the Internal Revenue Service's efforts to collect federal taxes.

We recognize that this result works considerable hardship on Core Energy, whose efforts and investments brought the oil to the surface. As the government emphasizes, however, Core Energy could have avoided this hardship by timely recording its interest. In addition, the federal tax lien was filed prior to the time Core Energy began drilling on the lease. Core Energy knew or should have known that it risked a judicial finding that the government had priority over it in the proceeds from the oil sold. Core Energy gambled and lost.

AFFIRMED.

