**PAUTLER et al. v. FRANCHOT et al.**

No. 11510—Opinion Filed Jan. 27, 1925.

Rehearing Denied April 7, 1925.

(Syllabus.)

**Oil and Gas—Royalty Rights of Lessor in Casinghead Gas Production—Construction of Lease.**

In an action for the recovery of royalties on products made from casinghead gas, where the lease sued upon contains a specific provision for royalties on oil products from oil wells, and royalties on gas produced from gas wells, and a stipulated price for gas produced from oil wells, such latter provision is sufficiently broad to cover all rights which the lessor may have in the casinghead gas coming from oil wells. Following Mussellem et al. v. Magnolia Pet. Co. et al., 107 Okla, 183, 231 Pac. 526.

Error from District Court, Tulsa County; Owen Owen, Judge.

Action by J. F. Pautler and another against N. V. V. Franchot and others. Judgment for defendants, and plaintiffs bring error. Affirmed.

Biddison & Campbell, for plaintiffs in error.

West, Sherman, Davidson & Moore, J. C. Denton, and R. H. Wills, for defendants in error.

HARRISON, J. The plaintiffs in this action, in legal effect, sought to collect a royalty on products obtained from casinghead gas. The meaning of the term, casinghead gas, is sufficiently well understood that it needs no elucidation on our part.

The petition in the lower court contained two counts, the cause of action being based on two separate leases, each covering a different tract of land. The two leases were practically the same in their provisions and identical in legal effect.

The plaintiffs based their causes of action upon the provision of the two leases, and alleged in substance that great quantities of gasoline were being made from casinghead gas by the lessees, and being sold upon the general market for vast sums of money, and that plaintiffs were entitled to royalties from the gasoline thus marketed, and that defendants had refused to pay them any royalties and had refused to account to them for the vast sums of money received for gasoline made from casinghead gas. Copies of the leases sued upon were attached to the petition and made exhibits to the respective counts thereof. The defendants answered, claiming that all rights which plaintiffs might have in the casinghead gas coming from the wells in question were covered by the terms of the leases in question, and that defendants tendered to plaintiffs all sums due them under the provisions of the two leases and that plaintiffs had declined and refused to accept same and had demanded a royalty on the products made from casinghead gas.

Plaintiffs filed reply to the answer of defendants, thus forming the issue as to whether, under the terms of the leases sued upon, plaintiffs were entitled to a royalty on the products made from the casinghead gas. When the case came on for trial defendants moved for judgment on the pleadings, which motion was granted, and judgment on the pleadings rendered in favor of defendants, the trial court thus holding, in legal effect, that, under the pleadings, plaintiffs had stated no right to recover royalties, and therefore had stated no cause of action.

And the cause is brought here on the assignment of errors of the lower court in rendering judgment on the pleadings.

The identical questions presented in this case were presented and determined by this court in cause No. 13962, Mussellem et al. v. Magnolia Petroleum Co. et al., 107 Okla. 183, 231 Pac. 526.

The action in the above case was based upon lease provisions identical in legal effect with those sued upon here, and asked for a royalty on products made from casing-head gas. It was held in that case that the third provision of the lease was sufficiently broad to cover all the lessor's rights in the casinghead gas. The lease provisions in said cause were as follows, to wit:

"In consideration of the premises, the said party of the second part (Kiskaddon and his assignees) covenants and agrees:

"First: To deliver to the credit of the parties of the first part (the plaintiffs herein) their heirs or assigns, free of cost, in the pipe line to which it may connect his well, the equal one-eighth part of all oil produced and saved from the leased premises.

"Second: To pay to the parties of the first part $300 each year in advance for the gas from each well, where gas only is found, while the same is being used off the premises, and the parties of the first part to have gas free of cost from any such well, for four stoves, and all inside lights in the principal dwelling house on said land, during the same time, by making his own connections with the well.

"Third: To pay the parties of the first part for gas produced from an oil well, and used off the premises, at the rate of $50 per year for the time during which such gas shall be so used, said payments to be made each three months in advance.

"The party of the second part shall have the right to use free of cost gas, oil and water produced on said land, for its operation thereon, except water from the wells of first party."

In that case the issues formed by the pleadings were the same as the issues formed in the case at bar, the trial court sustained a demurrer to the evidence in that case on the ground that it failed to state a cause of action, and the judgment of the trial court was affirmed by this court.

The lease provisions in the case at bar are as follows, to wit:

"1st. To deliver to the credit of lessor, free of cost, in the pipe line to which it may connect its wells, the equal one-eighth part of all oil produced and saved from the leased premises.

"2nd. To pay the lessor one-eighth of revenue from gas wells or wells computed at three cents per thousand for the gas from each well where gas only is found, while the same is being used off the premises, and lessor to have gas free of cost from any such well for all stoves and all inside lights in the principal dwelling house on said land during the same time by making their own connections with the well at their own risk and expense.

"3rd. To pay lessor for gas produced from any oil well and used off the premises at the rate of one-eighth revenue at 3c per M for the time during which such gas shall

be used, said payments to be made each three months in advance."

The right to recover in the Mussellem Case was based upon the third provision of the lease, and the right to recover in the case at bar is necessarily based upon the third provision in the leases sued upon.

The lease provisions in both cases are the same in legal effect, the only difference being that in the Mussellem Case the third provision provided that lessors should be paid for gas produced from an oil well and used off the premises at the rate of $50 per year, for the time during which such gas should be used. The third provision in the case at bar is that lessors should be paid for gas produced from an oil well and used off the premises at the rate of one-eighth revenue at 3c per M for the time during which such gas shall be used. In legal effect, so far as the rights of lessors are concerned, the lease provisions in the two cases are identical.

The opinion in the Mussellem Case is an exhaustive review of the authorities and scientific definitions pertaining to casinghead gas and products made therefrom.

It was held in the Mussellem Case that the third provision of the lease was sufficiently broad to cover all rights of lessor pertaining to casinghead gas, said third provision being the same, in legal effect, as the third provision in the case at bar.. We see no reason for departing from the holding in the Mussellem Case, and deem it unnecessary to enlarge upon the questions discussed and passed upon in said case, and upon said opinion and the authorities therein cited we conclude that the judgment of the trial court in rendering judgment on the pleadings in the case at bar should be affirmed. Judgment affirmed.

All the Justices concur.