## WILSON et al. v. KING SMITH REF. CO.

No. 17002—Opinion Filed Sept. 21, 1926.

Rehearing Denied Oct. 26, 1926.

1. **Oil and Gas—Royalty Rights—Rights to Casing-Head Gas Covered by Provision of Lease as to "Gas from Oil Wells."**

In an action for the recovery of royalties on products made from casing-head gas, where the lease sued upon contains a specific provision for royalties on oil products from oil wells, and where the lease provides that if gas is found in any well or wells on the premises the lessor is to have sufficient gas for domestic purposes free of charge, the remainder with all the gas from oil wells to go to the lessee, such latter provision is sufficiently broad to cover all rights which the lessor may have in the casing-head gas coming from oil wells. Following Mussellem et al. v. Magnolia Pet. Co. et al., 107 Okla. 183, 291 Pac. 526, and Pautler v. Franchot, 108 Okla. 130, 235 Pac. 209.

2. **Pleading—Allegations of Conclusions of Law not Admitted by Demurrer.**

Allegations in a pleading as to the meaning, application and effect of a provision in a contract, being conclusions of law, are not admitted by demurrer.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Creek County; Fred A. Speakman, Judge.

Action by H. C. Wilson and Lucy Wilson

against King Smith Refining Company. Judgment for defendant, and plaintiffs bring error. Affirmed.

Hughes, Foster & Ellinghausen, for plaintiffs in error.

Hagen & Gavin, for defendant in error.

Opinion by PINKHAM, C. The plaintiffs in error were plaintiff's and the defendant in error was defendant in the trial court. The parties will be referred to as they appeared in the lower court.

On October 24, 1912, the plaintiffs were the owners of certain land in Creek county, and on that date they executed an oil and gas mining lease thereon to the Scott-Wilson Company, and thereafter the said lease was duly assigned to various parties, and the defendant, the King Smith Refining Company, became the owner of said oil and gas mining lease by assignment, and it was in possession of said property and operating the same under said lease at the time of the trial. A copy of the said lease was attached to plaintiffs' petition.

The amended petition, after setting forth a description of the property upon which the lease in question was given and other information in regard thereto, contains the following allegations:

"Plaintiffs further allege and state that said product termed and known as casing-head gas is a product of oil wells made up of gas and evaporation of the lighter portion of crude oil, and that casing-head gasoline is produced from such casing-head gas, the gasoline being in fact neither a product of the oil from such wells, and not a product of the gas. Plaintiffs further allege and state that the product termed and known as casing-head gas is a product which has been produced by the defendant from the premises above described, and is a different and separate product from that mentioned or contained in the oil and gas lease above described, and that said defendant has been using said casing-head gas, and has been making therefrom a product known as casing-head gasoline, which said gasoline is a separate and different product entirely from that contained in the terms and conditions of the oil and gas lease above mentioned, and that at the time of entering into the contract for the oil and gas lease above referred to, said product of casing-head gas and casing-head gasoline was not contemplated by the parties, and was not contained in the terms and conditions of said oil and gas lease."

The oil and gas lease attached to plain-

tiffs' petition contains the following clause:

"In consideration of the said grant and demise, the party of the second part agrees to deliver to the parties of the first part one-eighth part of the oil realized from the premises, in tanks at the well without cost, or pay the selling price at the well therefor in cash, at the option of the parties of the first part. If gas is found in any well, or wells, on said premises, the parties of the first part are to have, upon demand, sufficient gas for domestic purposes free of charge; the remainder, with all the gas from the oil wells, to go to the party of the second part. If the party of the second part shall market any gas from any well producing gas only, then the parties of the first part shall receive therefor at the rate of $250 per annum for all gas so marketed or sold."

Plaintiffs prayed judgment in their first cause of action for one-eighth of the total amount of casing-head gasoline or casing-head gas produced and saved from said premises.

After issues joined the court authorized the defendant to refile its demurrer to the amended petition without prejudice to trial, which demurrer was by the court sustained, and judgment was rendered against the plaintiffs on the first cause of action stated in the petition. The plaintiffs excepted to the ruling of the court, and elected to stand on their petition, and the case comes regularly on the appeal of the plaintiffs to this court by petition in error and case-made attached.

It is the contention of counsel for plaintiffs that the averments contained in the first cause of action in the petition, taken in connection with other averments of the petition, state facts sufficient to constitute a cause of action in favor of the plaintiffs so as to entitle them to an accounting for casing-head gas taken from said premises and that the demurrer should have been overruled.

The plaintiffs seek to recover from the lessee for casing-head gas produced from the leased premises covered by said oil and gas mining lease.

The sole question for determination is whether the defendant's general demurrer to plaintiffs' petition, to which petition a copy of the oil and gas lease was attached, was properly sustained.

It will be observed from an examination of the provisions of that clause of the lease above set forth that the parties to the lease contract provided for at least three products which might be produced therefrom: First, the lessee agreed to account to the lessor for one-eighth of the oil produced from the premises; second, the lessee agreed to account to the lessor for sufficient gas for domestic purposes free of charge, or for the sum of $250 per annum, if the lessee marketed or sold gas from the premises; and third, the lease provided that the remainder, with all the gas from the oil wells, should go to the party of the second part (lessee); and while it is true that no mention of casing-head gas is made in the lease, it is clear, we think, from the language used, that after the lessee has delivered to the lessor "one-eighth part of the oil realized from the premises, * * * or paid the selling price at the well therefor in cash," and furnished to the lessor "gas for domestic purposes free of charge, the remainder with all gas from the oil wells" became the property of the lessee; so that it conclusively appears that the parties had something in mind different and distinct from gas simply, or oil simply, and that was "gas from an oil well."

Whether the parties at the time of the execution of this lease contract in 1912 did or did not anticipate the production of casing-head gas is, we think, immaterial, in view of the decisions of this court that gas from an oil well constitutes casing-head gas. Mussellem v. Magnolia Pet. Co., 107 Okla. 183, 231 Pac. 526; Pautler et al. v. Franchot et al., 108 Okla. 130, 235 Pac. 209.

In the Mussellem Case, supra, the court said:

"From the above citations of the evidence, the definitions of such gas as here in question, from the departmental regulations and scientific treatises on the subject, 'casing-head gas' is nothing other than gas from an oil well, and to concur in the contention made by plaintiffs would be tantamount to writing a modification into the third clause of the contract."

The lease in the Mussellem Case contained three clauses wherein the question of royalty was involved. The first referred to the royalty due the lessor in the event of the discovery and production of oil. The second referred to the royalty due the lessor in the event of the discovery and production of gas. The third was as follows:

"Third, to pay the parties of the first part for gas produced from an oil well, and used off the premises, at the rate of $50 per year, for the time," etc.

The third clause in the Mussellem Case is identical with that in the instant case, except that in the Mussellem Case the lessee contracted to pay the lessor $50 per year for gas from each oil well—that is to say, casing-head gas—whereas, in the instant case,

the parties provided that "all gas from an oil well" should pass to the lessee.

In the Pautler Case, supra, the plaintiff in error sought reversal of the lower court on a judgment on the pleadings. In the Pautler Case the third cause, analogous to the "third obligation" in the Mussellem Case and the third clause in the instant case, was as follows:

"3rd. To pay lessor for gas produced from any oil well and used off the premises at the rate of one-eighth revenue at 3c per M for the time during which such gas shall be used. * * *"

In the above case this court held that the identical questions raised were presented and determined by the court in the Mussellem Case; that the lease provisions in both cases were the same in legal effect.

It may be observed that the only difference between the Mussellem and Pautler cases, on the one hand, and the instant case on the other, is that the latter provides that the gas from an oil well, i. e., casing-head gas, goes to the lessee.

Plaintiffs rely particularly upon two decisions of this court for the purpose of effecting a reversal of the judgment of the trial court, to wit: Hammett Oil Co. v. Gypsy Oil Co., 95 Okla. 235, 218 Pac. 501; George v. Curtain, 108 Okla. 281, 236 Pac. 876.

In the Hammett Case, supra, the court, after citing authorities, said:

"We think these cases support the position that gasoline manufactured from casing-head gas is neither oil nor gas within the contemplation of an oil and gas lease, which makes no reference to casing-head gas, and nothing appears to indicate that the parties have contracted concerning the same."

This proposition simply means that where an oil and gas lease provides merely for a gas royalty and an oil royalty, and since casing-head gas is not gas simply, nor oil simply, in such case there is nothing which refers "to casing-head gas, and nothing appears to indicate that the parties have contracted concerning the same," and therefore no contract made which covers such product, since casing-head gas is gas from an oil well. If we had before us an oil and gas lease which provided merely a gas royalty and an oil royalty, instead of a lease which purports to fix the rights of the contracting parties to "gas from an oil well," and which, under the contract, was given to the lessee, a different question would arise.

In the George v. Curtain Case, supra, cited by plaintiffs, the court held, in effect, that

when an oil and gas lease contract provides merely for royalty on gas, and royalty on oil, the contract cannot be extended to cover that which by their silence the parties have indicated they did not have in contemplation, namely, gas from an oil well, or casing-head gas.

The case of Phillips. et al. v. Henderson Gasoline Co., 101 Okla. 277-279, 225 Pac. 668, cited by counsel for plaintiffs, lends no support to the contention made. The court said that:

"* * * If the parties made no contract regarding the waste product, then, by construing the contract in accordance with section 5051, Comp. Stat. 1921, the contract would not extend to this subject-matter."

But the lease in the instant case contains a clause which specifically fixes the rights of the parties to gas from an oil well—that is to say, casing-head gas.

It is urged that the first cause of action set forth in the petition stated facts sufficient to constitute a cause of action. The following allegation of the petition: "That at the time of entering into the contract for oil and gas lease above referred to, said product was not contemplated by the parties, and was not contemplated in the terms and conditions of said oil and gas lease," was admitted by the defendant's demurrer, and decisions of this court are cited to the effect that a demurrer to a pleading admits every material fact properly stated in the pleading.

These cases announce the rule in this state, and generally in other jurisdictions, but the proposition that the conclusions of the pleader are not admitted by the demurrer is too well settled to require the citation of authorities. The allegation that casing-head gas was not within the contemplation of the parties when they entered into their lease contract is merely the conclusion of the pleader.

In the case of St. Louis, Kennett & Southeastern Railroad Co. v. United States of America et al., 267 U. S. 346, the court said:

"Allegations in a petition as to the meaning, application, and effect of a provision of a contract, being conclusions of law, are not admitted by demurrer," citing U. S. v. Ames, 99 U. S. 35, 25 L. Ed. 295-300; Chicot County v. Sherwood, 148 U. S. 529-536, 37 L. Ed. 546-549; Equitable Life Assur. Soc. v. Brown, 213 U. S. 25, 53 L. Ed. 682-689.

From an examination of the entire record, we conclude that the judgment of the trial court sustaining the demurrer to the

first cause of action of plaintiffs' petition should be affirmed.

By the Court: It is so ordered.

Note.—See under (40) C. J. p. 1103, §729 (Anno). (2) 31 Cyc. p. 335; 21 R. C. L. p. 508; 4 R. C. L. Supp. p. 1418; 5 R. C. L. Supp. p. 1162.