## LONE STAR GAS CO. v. STINE et al.
### No. 1463—5700.

Commission of Appeals of Texas, Section A.
July 22, 1931.

Ben H. Powell, of Austin, Karl F. Griffith and Roy C. Coffee, both of Dallas, and Taylor, Muse & Taylor, of Wichita Falls, for plaintiff in error.

Kay & Akin and C. C. McDonald, all of Wichita Falls, and G. B. Smedley, of Fort Worth, for defendants in error.

CRITZ, J.

During the years 1911 and 1912, the defendants in error, J. H. Stine et al., were the owners of certain land in Clay county, aggregating more than 750 acres. On November 23, 1911, and December 5, 1911, Stine et al. for a cash consideration of $24,738 executed and delivered to the gas company certain gas deeds conveying to the gas company: "All our rights, title and interest, ownership and claim, both present and prospective, in all natural gas in and under the following tract and parcels of land," (here follows description of land).

These conveyances were duly acknowledged, delivered, and recorded.

At the same time the above gas deeds were executed and delivered, the parties entered into an "operating agreement." The pertinent parts of this agreement are set out in the opinion of the Court of Civil Appeals, and in the interest of brevity will not be repeated here.

On the trial of the case in the district court, it was shown that the gas company drilled a number of wells on the land in question, and now have about eight such wells producing gas. Prior to 1916, this gas was conveyed by the gas company to a compressor near the wells where it was compressed in order to increase the pressure in the mains, and thus facilitate its transportation through the pipe line. The gas was run from the compressor into the pipe line, which conveyed it to where it was sold for fuel purposes. During this time, when the weather was cold, and because of such low temperature and high pressure, gasoline, which was a part of the gas, and was in gaseous form when it came from the wells, would sometimes accumulate in the drips along the line in such quantities that it could be taken and used as motor fuel.

We here quote and adopt the following facts found by the Court of Civil Appeals: "In the year 1916 the appellee built its absorption plant, and after the completion of that plant the gas from the appellants' land was conveyed from the wells to the compressor station, and from the compressor station to the absorption plant, where it was run through a certain kind of crude oil. This crude oil absorbed from the gas the gasoline which was carried along with the gas in the form of vapor, and the dry gas, after the gasoline had thus been absorbed from it, went into the main lines of appellee, and was transported to various cities for fuel purposes. One of appellee's witnesses described the process of extracting the gasoline as being a method by which gas was run through a certain kind of oil so that the oil became saturated with the hydrocarbons that go to make gasoline. The testimony is that this gasoline vapor may be converted into gasoline either by the absorption method used by the appellee, or by compression and cooling. That is, that by compression and lowering of temperature, the gas or vapor will be changed from its vaporous form into liquid, and this is the method which is ordinarily used in changing casinghead gas into gasoline."

This suit was instituted in the district court of Clay county, Tex., by Stine et al. against the gas company for an accounting, and for a one-eighth royalty on all gasoline that was produced by the gas company by the process shown above.

The case was tried in the district court with a jury, but at the close of the testimony the trial judge directed a verdict for the gas company. The verdict was returned as directed,

and judgment entered accordingly. On appeal by Stine et al., the Court of Civil Appeals reversed the judgment of the district court and rendered judgment for Stine et al. 23 S.W.(2d) 752. The case is in the Supreme Court on writ of error granted on application of the gas company.

As we understand the opinion of the Court of Civil Appeals, it holds that as a matter of law the gasoline manufactured from the natural gas which flowed from the gas company's wells was oil within the meaning of the deeds and "operating agreement," supra. We think this holding is error. Humble Oil & Refining Co. v. Poe (Tex. Com. App.) 29 S. W.(2d) 1019, 1020; Magnolia Petroleum Co. v. Connellee (Tex. Com. App.) 11 S.W.(2d) 158.

A careful reading of the gas deeds and "operating agreement" clearly discloses that the "operating agreement" does not and was not intended to in any way subtract from the estate conveyed by the gas deeds, but was intended merely to provide a method by which the owner of the gas estate and the owners of the oil estate could work together and protect the interests of each. We must therefore determine what was conveyed by the gas deeds.

At this point, we deem it expedient to quote the following from Judge Leddy's opinion in Humble Oil & Refining Co. v. Poe, supra:

"It is difficult to conceive upon what theory defendant in error was entitled to recover for gasoline which could have been manufactured from gas produced from a gas well, in the face of the provision in the lease that 'lessee agrees to pay the lessor at the rate of $250 each year, payable quarterly in advance, for the gas from each well where gas only is found, while the same is being used off the premises.' * * *

"Plaintiff in error acquired the right to use the gas produced from a gas well it might drill on the premises covered by the lease by the payment of the agreed rental of $250 per annum. Having bought and paid for such gas it owned the same, including all of its constituent elements, and therefore had the lawful right to make such use of it as it might deem proper. Wilson v. King Smith Refining Co., 119 Okl. 256, 250 P. 90; Shaw v. Fender, 138 Ga. 48, 74 S. E. 792; McRae v. Smith, 164 Ga. 23, 137 S. E. 390; Magnolia Petroleum Co. v. Connellee, supra."

■ The real questions presented in the Poe Case, supra, and the questions here presented, are in law the same. In the Poe Case, the oil company had a lease, while in the instant case the gas company has a deed to "all natural gas." In the instant case, the gas company has the right, under its deeds, to "drill for and develop gas and take the same free from any charges or royalty." The gas company paid a large consideration running into thousands of dollars for "all natural gas"

in and under these lands. An examination of the several instruments clearly discloses that the gas conveyed was not limited to any particular kind or character of gas, but the conveyance is all-embracing as regards gas, and covers and includes "all natural gas." The term "all natural gas" would include all the substances that come from the well as gas, and that regardless of whether such gas be wet or dry. It is undisputed in the evidence that the term "natural gas" includes numerous elements or component parts, but the very language of the conveyance is such as to include therein all these component parts which were in gaseous form when they came from the wells.

It is a fact disclosed by this record that gas and gasoline can be manufactured from coal. Could it be successfully contended that if the owner of land should convey all the coal in, on, and under such land, and reserve all oil and gas, that he could claim as gas and oil the gas and gasoline manufactured from the coal? We think not; yet, such a claim would be as just and as logical as the one here advanced by Stine et al. Furthermore, suppose Stine et al. had taken their oil and manufactured gas therefrom, Could the gas company have claimed the same under their gas deed? We think to state such a question is to demonstrate the fallacy of the contention here made by Stine et al. In other words, if it is permissible under these gas deeds and "operating agreement" for Stine et al. to take from the gas company the oil element which formed a constituent gaseous part of the gas as it came from the well, it would be equally as permissible for the gas company to take from Stine et al. the various gaseous elements which form component parts of oil.

■ The evidence in this case conclusively shows that the gasoline in controversy here was manufactured from gas which came from the wells as gas. This gasoline was separated from the gas and became liquid only when it was subjected to the manufacturing process shown above. It is true that the gasoline element was in the gas when it came from the well, but it was then in gaseous form, that is, it was an element or component part of the natural gas, and gas or natural gas was the thing conveyed by the deeds. The legal effect of the deed was to convey "all natural gas," and by the term "natural gas" is meant all the constituent elements composing the same. The gas company, having become the owner of "all natural gas" in or under this land, has the right to make such use thereof as it sees fit. It may sell the gas in its natural form as it came from the earth, or it may split it into its constituent elements and sell such elements, including the gasoline.

The Court of Civil Appeals holds that the instant case is ruled by the holding of Section

B of the Commission, speaking through Judge Speer, in Reynolds v. McMan Oil & Gas Co., 11 S.W.(2d) 778. We have carefully examined that opinion in the light of the contract there construed and think that a correct conclusion was reached, as applied to that contract construed in the light of that record. We frankly admit that we have not attempted to harmonize all that was there said with what was said by Judge Leddy in the two other opinions hereinabove cited. We are persuaded, however, that there is nothing said in the Reynolds Case which was necessary to a decision of that case that can be construed as announcing a rule which would operate to give Stine et al. any interest in the gasoline manufactured from the natural gas taken from the wells in'the instant case. In the instant case, the grant to the gas estate is general and all-embracing, and nowhere in the gas deed or in the "operating agreement" is there any language used that can be construed as making any exception to the general grant of "all natural gas" contained in the gas deeds. Stine et al. conveyed to the gas company "all natural gas in and under" this land, and further they expressly granted to the gas company the right, "at all times to enter upon the land, drill for and develop gas and take the same free from charges and royalty," and they should abide such contract as they made it.

We recommend that the judgment of the Court of Civil Appeals be reversed, and the judgment of the district court affirmed.

CURETON, C. J.

Judgment of the Court of Civil Appeals is reversed, and that of the district court is affirmed, as recommended by the Commission of Appeals.