

# THE ATTORNEY GENERAL
## OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

AUSTIN, TEXAS

January 21, 1950

Honorable Bascom Giles, Commissioner
General Land Office
Austin, Texas

Opinion No. V-985

Re: Whether well producing gas
from which condensate is ex-
tracted may be included in
"oil" formula and whether
"gas" clause is applicable
to gas produced.

Dear Commissioner:

Your request for an opinion relates to
whether under oil and gas lease contract MF 18736,
a well (Well No. 7) producing gas only and classified
as a gas well by the Railroad Commission of Texas
from which condensate is extracted may be included
in the "oil" formula by the operator of the lease,
Carter-Gregg Oil Company. You also ask our opinion
as to the correct compensation to be collected on
production from this well.

Briefly, under the facts which are set out
in detail in your request and not repeated here, you
ask:

1. The compensation to be collected
by the State for gas produced from the
well, and

2. Whether Well No. 7 should be in-
cluded in the "oil" formula.

The questions presented turn upon determin-
ation of whether production from Well No. 7 is "gas"
within the "gas" compensation clause of the contract
and as such subject to payment of royalty to the State
as "gas." We will consider the questions in the order
stated.

Any doubt that "gas" under the lease means "natural gas" is resolved by examination of the lease as a whole and by reference to the Act under authority of which the lease was executed. That Act, Senate Bill 25, Acts 42nd Leg., 2nd C.S., 1931, Ch. 40, p. 64, reads in part:

"... beds of rivers and channels belonging to the state shall be subject to development by the state and to lease or contract for the recovery of petroleum oil and/or natural gas...." (Emphasis added)

Paragraph 24 of the contract provides that:

"Should there be any conflict in any provisions of this contract with that of Chapter 40 referred to above, then and in that event, the provision of such law shall be written into this contract, and shall control...."

"Natural gas" is defined as a gaseous product arising from petroleum wells and is divided into two classes, "dry natural gas" and "wet natural gas." "Dry natural gas" is "natural gas" that does not contain an appreciable amount of readily condensable gasoline and is usually not intimately associated with petroleum. 58 C.J.S. 22, 23, Mines and Minerals, Sec. 2.

Section 1, Article 6049e, V.C.S., reads in part:

"... The words 'natural gas' and 'gas' mean the same thing whether used in this Act or elsewhere in the conservation Statutes of this State relating to oil and gas...."

Under the decisions in Theisen v. Robison, 117 Tex. 489, 8 S.W.2d 646 (1928), and Ehlinger v. Clark, 117 Tex. 489, 8 S.W.2d 666 (1928), and in the more recent case of State v. Reagan County Purchasing Co., 186 S.W. 2d 128 (Tex. Civ. App. 1945, error ref. w.o.m.), the lessee acquires (under a State lease) all of the minerals in place. However, in view of the provisions of the contract here in question it is clear that the rule in these cases does not apply. Paragraph 26 of the contract reads in part:

"It is the intention of the Board and of the Company to jointly develop said premises by primarily placing the responsibility thereof on said company and making such company its agent for that purpose. This contract is not intended as a lease nor the sale of any of the oil and/or gas in place, but on the contrary, this Board and the State reserve the title to all of the oil and gas in place and until actually produced at the surface of the earth and saved...."

While casinghead gas or the gasoline content thereof is held to be within the "oil" royalty clause, there is a well defined distinction in law between casinghead gas and gas produced from a gas well. Attorney General's Opinion No. O-1760; Humble Oil & Refining Co. v. Poe, 29 S.W.2d 1019 (Comm. App., 1930), and authorities there cited.

Although we have found no Texas case directly "in point" on the question, in Lone Star Gas Company v. Stine, 41 S.W.2d 48 (Comm. App. 1931), it was said that a gas deed covering "all natural gas" included all the substances that come from the well as gas regardless of whether such gas be "wet" or "dry." Cf. Lone Star Gas Company v. Harris, 19 S.W.2d 178 (Tex. Civ. App. 1929, error ref.); and Lone Star Gas Co. v. Harris, 45 S.W.2d 664 (Tex. Civ. App. 1931), 45 S.W.2d 998 (Tex. Civ. App. 1932, error ref.); Union Producing Co. v. Pardue, 117 F.2d 225 (C.C.A. 5th, 1941). It is held that gasoline is one of the constituent elements of "natural gas" as that term is ordinarily used and understood. Gasoline is one of the constituent elements of natural gas and the sale of "gas" includes all and not part of its content. We think payment should be made on all of the "gas" and not on part of its content. Wall v. United Gas Public Service Co., 152 So. 561 (La. Sup. 1934), and cases there cited.

A recent expression by the Federal Courts in relation to the question is found in a decision by the Circuit Court of Appeals, Fifth Circuit. In that case, the lease provided for payment to lessor of 1/8th of the proceeds derived from the sale of gas at the mouth of the well. The gas was not sold but processed and the products sold. The lessee was held liable for 1/8th

of the fair value of the gasoline and 1/8th of the proceeds of the sale of the residue gas less a proportionate credit for cost of transportation, separation and sale. Phillips Petroleum Co. v. Johnson, 155 F.2d 185 (C.C.A. 5th, 1946, cert. den., 329 U.S. 730). Cf. Phillips Petroleum Co. v. Bynum, 155 F.2d 196 (C.C.A. 5th, 1946).

We think the contract here in question evidences a purpose to treat production from Well No. 7 as "gas" as distinguished from "oil," "casinghead gas" or "other gaseous substances." This is so because "dry gas" as used in paragraph 6 of the contract obviously refers to "gas" and is a part of gas. The facts submitted indicate that the operator is actually treating production from the well as "gas" as that term is used in the contract. The obligation is to account to the State for the "gas" in the form produced from the well when saved and sold. The contract provides that "... The only obligation of said company when it either purchases or sells all of the gas produced from said well .. is that it remit fifty per cent (50%) of the proceeds from the sale thereof...." See Attorney General's Letter Opinion dated January 6, 1948.

It is our view that the contract contemplates payment of 50% of the proceeds from the sale of the "gas" to the State under the "gas" clause for gas produced from wells producing gas only whether such gas be "wet" or "dry," and regardless of whether the gas is sold at the well or split into its constituent parts and sold, and we so hold. Lone Star Gas Co. v. Stine, supra; Phillips Petroleum Co. v. Johnson, supra.

In answer to your second question, having determined that production from Well No. 7 is "gas" and within the "gas" clause of the contract, we agree with your view that production from the well should not be included in "average daily production" under the "oil" formula.

The contract provides separate and distinct provisions for payment for the "oil" and the "gas" belonging to the State. We find no intention expressed in the compensation clauses or elsewhere in the contract to treat wells producing gas only as oil wells. It may not be done under the lease contract, and we so hold.

## SUMMARY

Production from a well producing gas only is within the "gas" clause of the oil and gas lease contract submitted (MF 18736) and the State is entitled to 50% of the proceeds from the sale thereof in the form sold.

Yours very truly,

PRICE DANIEL
Attorney General

By *Everett Hutchinson*

Everett Hutchinson
Assistant

EH:db

APPROVED:

Charles D. Mathews
Executive Assistant

Price Daniel
Attorney General