Harold J. WILLIAMS, Plaintiff in Error,

v.

PHILLIPS PETROLEUM COMPANY, a Delaware Corporation, Gulf Oil Corporation, a Pennsylvania Corporation, Pan American Petroleum Corporation, a Delaware Corporation, and Amerada Petroleum Corporation, a Delaware Corporation, Defendants in Error.

No. 40569.

Supreme Court of Oklahoma.

Sept. 28, 1965.

James D. Giles, Morris Flynn, Oklahoma City, for plaintiff in error.

Lloyd G. Minter, Bartlesville, Cecil C. Hamilton, Edward J. Fauss, Michael B. Silva, Oklahoma City, for defendant in error Phillips Petroleum Co.

Comet C. Johns, Oklahoma City, for defendant in error, Gulf Oil Corp.

Norton Standeven, Oklahoma City, for defendant in error Pan American Petroleum Corp.

John S. Miller, Tulsa, for defendant in error Amerada Petroleum Corp.

IRWIN, Justice:

Harold J. Williams, referred to as plaintiff, commenced proceedings against Phillips Petroleum Company, Gulf Oil Corporation, Pan American Petroleum Corporation and Amerada Petroleum Corporation, hereinafter referred to as defendants, to recover damages for slander of title. The trial court sustained defendants' separate demurrers to plaintiff's second amended petition, and on plaintiff's refusal to further plead, the trial court entered its order and judgment dismissing the action with prejudice as to each defendant.

## PLEADINGS

Plaintiff's allegations, when considered in connection with an assignment and agreement referred to and set forth as Exhibit B in the appendix of his brief are: that by virtue of the assignment and agreement executed by defendants in 1954, defendants conveyed all their right, title and interest in and to certain (upper) formations covered by an oil and gas lease; that he became the owner of the assigned portion of the oil and gas lease; that defendants retained the oil and gas lease rights covering the remaining (lower) formations; that a salt water disposal well was located on and within the confines of his oil and gas lease; that during the time he owned his leasehold estate operations for disposing salt water in said well were conducted by defendants with the tacit permission of plaintiff and plaintiff paid defendants for such disposal service; that defendants disposed of plaintiff's salt water and their own salt water from operations in the vicinity in the salt water disposal well; that in August, 1961, defendants falsely and maliciously offered for sale and did sell the salt water disposal well thereby asserting ownership of such well and denying plaintiff's ownership; that defendants knew plaintiff owned the salt water disposal well; that the purchaser thereof asserted ownership of the well to the exclusion of plaintiff; that the salt water disposal well was necessary to the operation of plaintiff's leasehold estate; that he later sold his leasehold estate to the purchasers of the salt water disposal well but by virtue of defendants maliciously claiming ownership and selling such well, his title was slandered and he was effectively deprived of his bargaining position in negotiating sale of his lease; and that defendants were guilty of oppression and malice, both actual and presumed.

## CONTENTIONS

Plaintiff contends that defendants neither excepted nor reserved the salt water disposal well in the 1954 assignment and agreement and he became the owner thereof without reservations or restrictions and defendants are estopped to deny the nature and extent of his interest when defendants maliciously sold such well in 1961; and that his allegations sufficiently alleged facts which established the essential elements required to support his action for slander of title.

Defendants argue that plaintiff's allegations are insufficient because of failure to allege the loss of a sale, but to the con-

trary, specifically alleged he did sell his leasehold estate to the identical purchasers to whom defendants sold their interest and that the allegations do not constitute a sufficient allegation of malice; that malice and loss of sale are essential elements in an action for slander of title; and that plaintiff never acquired title to the salt water disposal well and had no title which could be slandered.

## CONCLUSION

■■ In considering the allegations of the petition for the purpose of testing the sufficiency thereof to withstand a demurrer, it is well established that a demurrer admits the truth of all facts well pleaded together with all inferences which may be legally drawn therefrom, and the petition must be liberally construed in favor of the plaintiff; but if plaintiff is not entitled to recover under the facts alleged, a demurrer thereto should be sustained. See Williams v. City of Bristow, Okl., 350 P.2d 484, 84 A.L.R.2d 501; and Brodsky v. Atchison, Topeka & Santa Fe Railway Co., Okl., 368 P.2d 852. Where there is a variation between the allegations of the petition and the copy of the exhibits attached thereto upon which the action is founded, the provision and terms of the exhibit will control. See Nabob Oil Co. v. Bay State Oil and Gas Co., 208 Okl. 296, 255 P.2d 513; and Hostutler v. State ex rel. Commissioners of the Land Office, Okl., 302 P.2d 983. And, allegations in a pleading as to the meaning, application and effect of a provision in a contract, being conclusions of law, are not admitted by demurrer. See Wilson v. King Smith Refining Co., 119 Okl. 256, 250 P. 90, and Wagner v. Land, 152 Okl. 225, 4 P.2d 81.

■ It necessarily follows that plaintiff's rights in and to the salt water disposal well, if any, must be by virtue of the assignment and agreement executed by defendants in 1954 in favor of plaintiff's remote grantors. This assignment and agreement was referred to and relied upon by plaintiff in his pleadings and must be considered in connection with the allegations. If there is a variation between the rights in and ownership of the salt water disposal well alleged and the assignment and agreement on which plaintiff's rights in and ownership of such well are predicated, the provisions and terms of the assignment and agreement are controlling.

The pleadings disclose that the hole for the salt water disposal well was drilled in 1943. The assignment and agreement of 1954 did not mention such well or the operating equipment and we are unable to determine if a dry hole was converted to salt water disposal well subsequent to the 1954 assignment, or whether defendants were operating the salt water disposal well at the time the 1954 assignment and agreement was executed.

■■ We will first assume that defendants were operating the salt water disposal well at the time the 1954 assignment and agreement was executed. In Vol. 3, Summers Oil and Gas, Sec. 555, p. 661, we find this language:

"Ordinarily it is said that the assignee of an oil and gas lease acquires the interest of his assignor. This statement as usually interpreted means that the assignee acquires the privilege of operating the land for oil and gas purposes subject to the covenants and conditions of the lease. But where a lessee assigns a lease upon which operations have been started, the question is sometimes raised as to whether such assignment carries with it assignor's interest in the machinery and equipment on the land. This question is usually determined from the intention of the parties as expressed in the deed of assignment or the contract to assign. *If the contract expressly provides for a sale of the machinery and equipment then on the land used in the development of it for oil and gas the title to such property passes to the assignee. If, on the other hand, nothing is expressed from which there may be found an intention to assign the interest in such prop-*

*erty, it will not pass."* (emphasis ours).

The above rule is in harmony with the rule announced in United Gas Public Service Co. v. Miles, 178 La. 520, 152 So. 71, promulgated by the Supreme Court of Louisiana. In that case the Court, in its original opinion, held the assignee did not acquire all the rights of the assignor but the natural gas rights only as no mention was made in the assignment whatever of machinery and fixtures, such as casings in the wells.

However, it was pointed out in the petition for rehearing that the assignment provided for transfer of all equipment, piping, derricks, machinery valves, and/or connections used or in any manner connected with the wells. The court thereupon amended its opinion and held:

> "Assignment of natural gas rights under mineral lease, together with all 'piping,' etc., held to include casing, so as to vest ownership thereof in assignee."

In this connection see Orfic Gasoline Production Co. v. Herring (Tex.Civ.App.), 273 S.W. 944; Moore v. Carey Bros. Oil Co. (Tex.Com.App.), 269 S.W. 75, 39 A.L. R. 1247; and Cosden v. Cline and Cline v. Cosden, 10 Cir., 26 F.2d 631.

We therefore hold that if the defendants were operating the salt water disposal well in 1954 when they entered into the assignment and agreement contract, that since no mention was made of such well and the assignment and agreement contained no language from which it may be found an intention to transfer the machinery and equipment thereon, the same was not conveyed by defendants and they remained the owners of the machinery and equipment used in the operation of the salt water disposal well. However, the fact that defendant retained ownership of the machinery and equipment in the salt water disposal well does not necessarily determine that they retained the right to operate a disposal well within the confines of the lease assigned. This will be considered in connection with the following assumption.

We will now assume the salt water disposal well was not in operation in 1954 when the assignment and agreement was executed but defendants subsequently converted the dry hole drilled in 1943 to a salt water disposal well.

In Sunray Oil Co. v. Cortez Oil Co., 188 Okl. 690, 112 P.2d 792, Sunray obtained an assignment of an oil and gas lease on which a well had been drilled and abandoned. Sunray also obtained from one Genevieve Greer, the owner of the surface and $^{53}/_{60}$ of the mineral interest, a license to use the well for the disposal of salt water produced from other lands in the vicinity. Cortez Oil Company owned an undivided one-fourth mineral interest in and under the tract on which the salt water disposal well was located and it sought to enjoin Sunray from so using said well.

The trial court granted a permanent injunction and on appeal the same was reversed. In reversing the judgment of the trial court we recognized that an ordinary mineral grantee does not acquire ownership of oil and gas in place but only that portion as the grantee may find and reduce to possession; and, a mineral grant vests no title to any oil or gas in the grantee which he does not extract and reduce to possession and no title to any corporeal right or interest. We also recognized that subject to the rules of law with reference to due care, etc., the owner of land ought not to be prohibited from the full use and benefit of his land so long as he does not by such use injure or damage other persons.

In that case we said that Genevieve Greer, being the owner of the land, subject only to the oil and gas lease, and subject to the one-fourth interest in the oil and gas and other mineral rights owned by Cortez, had the right to use the surface and substrata of her land as she saw fit, or permit others so to do, so long as

such use does not injure or damage other persons.

The possibility of damages was considered in the above case but we said Cortez Oil Company failed to prove to any degree of certainty or probability that it would be injured in any way by operation of the salt water disposal well.

We can see no reason why the rule in the above case would not only be persuasive, but applicable, in the instant case. Plaintiff did not allege that he owned an interest in the land, as such, and when his predecessors acquired the oil and gas lease, by assignment in 1954, defendants were either conducting or subsequently started to conduct the salt water disposal operations. Plaintiff did not allege that he, or any of his predecessors, was ever in possession of the well but that " * * * operations for disposing of salt water into said salt water disposal well were conducted by defendants with the tacit permission of plaintiff, and plaintiff paid defendants for such disposal service."

■ In other words, at the time plaintiff alleged that defendants slandered his title by offering for sale and selling the salt water disposal well, defendants owned the machinery and equipment in such well and were conducting salt water disposal operations. Plaintiff at that time could not have enjoined defendants from such operation, unless, perhaps, he would have been able to prove that such operations damaged his oil and gas rights and the right to conduct such operations was inferior to his oil and gas leasehold rights. Whatever rights the landowner may have asserted against defendants can not, under plaintiff's allegations, inure to plaintiff's benefit.

We therefore conclude that the trial court was correct in sustaining the demurrers of the defendants. Having made such determination we find it unnecessary to consider the other issues presented and accordingly affirm the judgment of the trial court.