**Affirmed and Opinion filed May 16, 2019.**



In The

# Fourteenth Court of Appeals

### NO. 14-18-00038-CV

## TEXAN LAND & CATTLE II, LTD., Appellant

## V.

## EXXONMOBIL PIPELINE COMPANY, Appellee

**On Appeal from the 269th District Court
Harris County, Texas
Trial Court Cause No. 2016-61262**

## O P I N I O N

The question before us is whether a pipeline easement's right-of-way to transport "oil or gas" is limited to "crude petroleum," or alternatively whether the easement also permits transportation of the refined petroleum products gasoline and diesel. The trial court held the latter interpretation applied and granted summary judgment in the easement holder's favor on the landowner's claims for breach of contract, trespass, and declaratory judgment. The landowner appeals, asserting that the easement's terms oil or gas mean only crude oil.

For the reasons explained below, we agree with the trial court that those terms are not so limited, and we affirm the summary judgment in the easement holder's favor.

## Background

The facts are undisputed. Appellant Texan Land & Cattle II, Ltd. ("TLC") owns a tract of real property in Harris County. Appellee ExxonMobil Pipeline Company ("ExxonMobil") owns a pipeline easement across TLC's property. ExxonMobil's easement rights arise from a December 1919 "right-of-way deed" that granted ExxonMobil's predecessor, Humble Oil Company, the right of way to lay, maintain, operate, and remove a pipeline for the "transportation of oil or gas" across TLC's property. The easement does not define oil or gas.

ExxonMobil has been transporting gasoline and diesel through the pipeline since at least 1995. TLC sued ExxonMobil, claiming that ExxonMobil was exceeding its rights under the easement. TLC sought an injunction, damages for trespass and breach of contract, and declaratory relief.

Both parties moved for summary judgment and disputed the meaning of the terms oil and gas as contained in the easement. According to TLC, those terms granted ExxonMobil the right to transport only "crude oil" or "crude petroleum" but not refined products. ExxonMobil, on the other hand, argued that the terms oil and gas, as used in pipeline easement agreements from the early 20th century, include refined products like gasoline and diesel. The parties do not dispute that gasoline and diesel are refined petroleum products.

The trial court denied TLC's motion, granted ExxonMobil's motion, and signed a take-nothing judgment in ExxonMobil's favor. TLC appeals.

2

## Standard of Review on Summary Judgment

We review a trial court's ruling on a motion for summary judgment de novo. *Tarr v. Timberwood Park Owners Assoc., Inc.*, 556 S.W.3d 274, 278 (Tex. 2018). To prevail on a traditional motion for summary judgment, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). When both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, we consider the summary judgment evidence presented by both sides, determine all questions presented, and, if we determine that the trial court erred, render the judgment the trial court should have rendered. *Tarr*, 556 S.W.3d at 278. We may affirm if any of the theories presented to the trial court and preserved for review are meritorious. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004); *Haro v. Universal Underwriters Ins. Co.*, 162 S.W.3d 661, 662 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

## Analysis

In a single issue, TLC challenges the summary judgment in ExxonMobil's favor. The dispositive question, the parties agree, is the meaning of oil and gas as used in the easement. According to TLC, a Commission of Appeals decision and certain statutes of roughly the same era as this easement specifically define "oil" to mean only crude petroleum, and those definitions control over secondary sources—such as dictionaries and other reference materials relevant to the oil and gas industry—in discerning the meaning of undefined easement terms. ExxonMobil responds that TLC's primary authority does not support its position, that TLC's arguments disregard traditional contract interpretation principles, and that the trial court correctly applied the plain, ordinary, and accepted meaning of oil and gas in ruling that those terms include not only crude oil but also gasoline and diesel.

3

## A. Law Applicable to Easement Interpretation

An easement is a nonpossessory interest that allows its holder to use another's property for a stated purpose such as, in this instance, the right to lay, operate, and remove a pipeline for the transportation of oil or gas. *See Marcus Cable Assocs. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002); *Brownlow v. State*, 251 S.W.3d 756, 760 (Tex. App.—Houston [14th Dist.] 2008), *aff'd*, 319 S.W.3d 649 (Tex. 2010). An easement like the present one is an agreement among parties and therefore ordinary contract interpretation principles apply. *See Marcus Cable*, 90 S.W.3d at 700. The contracting parties' intent, as expressed in writing, determines the scope of the conveyed interest and the purposes for which it may be used. *See id.* at 700-01; *see also DeWitt Cty. Elec. Co-op v. Parks*, 1 S.W.3d 96, 103 (Tex. 1999); *Houston Pipe Line Co. v. Dwyer*, 374 S.W.2d 662, 664-65 (Tex. 1964). When possible, we must determine and give effect to the parties' mutual intent at the time of the contract's execution. *Myers v. Gulf Coast Minerals Mgmt. Corp.*, 361 S.W.2d 193, 197 (Tex. 1962). Unless defined, we give easement terms their plain, ordinary, generally accepted meaning,[1] which we generally determine by consulting dictionaries.[2] When an express easement is unambiguous—no party asserts ambiguity here—the trial court must interpret it as a matter of law, and the appellate court reviews a trial

---

[1] *Marcus Cable*, 90 S.W.3d at 701.

[2] *See, e.g.*, *Loya v. Loya*, 526 S.W.3d 448, 452 (Tex. 2017) (using Black's Law Dictionary, Merriam-Webster's Collegiate Dictionary, and Compact Oxford English Dictionary to define "future income" when contract left phrase undefined); *In re Davenport*, 522 S.W.3d 452, 456-57 (Tex. 2017) (orig. proceeding) ("Courts may look to dictionaries to discern the meaning of a commonly used term that the contract does not define."); *Houston Pipe Line Co.*, 374 S.W.2d at 664 (referring to Webster's New International Dictionary and Black's Law Dictionary to determine meaning of "operating" and "maintaining" in relation to pipeline); *In re Marriage of McNelly*, No. 14-13-00281-CV, 2014 WL 2039855, at *4 (Tex. App.—Houston [14th Dist.] May 1, 2014, no pet.) (mem. op.) (consulting Webster's Dictionary and Black's Law Dictionary to define terms "bank" and "broker," which were undefined in contract); *Wood v. Coastal States Crude Gathering Co.*, 482 S.W.2d 954, 957 (Tex. App.—Corpus Christi 1972, writ ref'd n.r.e.) (defining pipeline easement term "alongside" by using Webster's dictionary definition).

court's interpretation of an unambiguous easement de novo. *See DeWitt Cty. Elec. Co-op*, 1 S.W.3d at 100; *CenterPoint Energy Houston Elec. v. Bluebonnet Dr*., 264 S.W.3d 381, 388 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). "When an easement is susceptible to only one reasonable, definite interpretation after applying established rules of contract construction, we are obligated to construe it as a matter of law even if the parties offer different interpretations of the easement's terms." *Marcus Cable*, 90 S.W.3d at 703.

## B.     The Meaning of Oil and Gas

The parties have not cited and we have not found a Texas appellate decision addressing directly the meaning of oil or gas in a pipeline easement. Because this easement does not define oil or gas, our task is to give those terms their plain, ordinary, generally accepted meaning. *See id.* at 701. Reference to the ordinary meaning of oil or gas as reflected in dictionaries and other secondary sources supports ExxonMobil's argument and the trial court's judgment. ExxonMobil directed the trial court to *The Century Dictionary*, published in 1914, which defined "oil" broadly as the "general name for a class of bodies which have all or most of the following properties in common: they are neutral bodies having a more or less unctuous feel and viscous consistence, are liquid at ordinary temperatures, are lighter than water, and are insoluble in it, but dissolve in alcohol and more readily in ether, and take fire when heated in air, burning with a luminous smoky flame." Century Dictionary: An Encyclopedic Lexicon of the English Language 4095 (William Dwight Whitney et al. eds., vol. VI, 1914). According to this dictionary, "oil" is divided into three classes: "fatty or fixed oils, essential or volatile oils, and the mineral oils." *Id.* In turn, "mineral oils" include "petroleum and its derivatives, . . . mixtures of hydrocarbons, some being exclusively paraffins, others containing

5

varying quantities of hydrocarbons of the olefine and naphthene series." *Id.*[3] This source provided a broad definition of oil, identified three types of oils, and specified that mineral oils include "mixtures of hydrocarbons."

Additionally, ExxonMobil cited sources from the 1910s and 1920s broadly defining the term "gas." For example, Webster's Dictionary defined "gas" as including "any gas, or gaseous mixture, with the exception of atmospheric gas; specif.: . . . *Any combustible gaseous mixture used for illuminating or as a fuel*[.]" Webster's New Int'l Dictionary of the English Language 892 (W. T. Harris et al., ed. 1915) (emphasis added).

ExxonMobil also identified an industry-specific reference, *A Handbook of the Petroleum Industry*, published in 1922. In language notably echoing earlier sources, the *Handbook*'s glossary defined "oil" as:

> [a]n unctuous combustible substance, liquid, or at least easily liquefiable on warming and soluble in ether but not water.
>
> This term includes (a) fatty oils and acids; (b) essential oils, mostly of vegetal origins, such as eucalyptus, and turpentine, and (c) mineral oils, such as petroleum products, including lubricating oils.

Handbook of the Petroleum Industry 907 (David T. Day ed., 1922). This handbook further described gasoline as "clear, white-water oil." *Id.* at 457. It specifically referred to gasoline and other petroleum products as "oils," and stated that oil may be "distillate or crude." *See id.* at 434, 458. Additionally, ExxonMobil relied on a 1925 industry publication entitled *The Oil Industry*. This book used the terms "oil"

---

[3] ExxonMobil also cited a later publication, the *Shorter Oxford English Dictionary*, published in 1933, which defined "oil" similarly as divided into the same three classes, including mineral oils, "which are mixtures of hydrocarbons." Shorter Oxford English Dictionary on Historical Principles 1364 (C.T. Onions et al. eds., vol. II, 1933).

and "refined oil" interchangeably.  *See* Ernest Raymond Lilley, The Oil Industry 438, 442-46 (1925).

ExxonMobil appropriately provided both layman's dictionaries and industry reference books establishing that refined petroleum products, like gasoline and diesel, fell within the commonly accepted meaning of the terms oil or gas as of the easement's approximate date.  *See, e.g.*, *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 211 (Tex. 2011) (using an industry-specific manual to define certain oil and gas terms); *Loya*, 526 S.W.3d at 452 (using dictionaries to define contract terms); *In re Davenport*, 522 S.W.3d at 456-57 (same); *In re Marriage of McNelly*, 2014 WL 2039855, at *4 (same).  TLC did not provide any contravening evidence of commonly accepted or industry-specific definitions for these terms.  Nor did TLC address the meaning of "gas" specifically or rebut ExxonMobil's definitions showing that the term's ordinary meaning includes gaseous mixtures used as fuel.

Texas courts have addressed the terms "natural gas" or "gas" in a deed or lease and found that they include "all constituent elements," including refined products such as gasoline.  In *Lone Star Gas Co. v. Stine*, 41 S.W.2d 48, 49 (Tex. Comm'n App. 1931, judgm't adopted), the court considered a claim that the sale of "natural gas" did not include the sale of gasoline that was removed from the gas stream through compression and changes in temperature.  In rejecting the argument, the court held that "[t]he legal effect of the deed was to convey 'all natural gas,' and by the term 'natural gas' is meant all the constituent elements composing the gas."  *Id*. Other courts have reached similar results in related contexts.  *See Humble Oil & Refining Co. v. Poe*, 29 S.W.2d 1019, 1020 (Tex. Comm'n App. 1930, judgm't adopted) (concerning mineral lease, "Plaintiff in error acquired the right to use the gas produced from a gas well it might drill on the premises covered by the lease by the payment of the agreed rental of $250 per annum.  Having bought and paid for

7

such gas it owned the same, including all of its constituent elements, and therefore had the lawful right to make such use of it as it might deem proper."); *Reynolds v. McMan Oil & Gas Co.*, 11 S.W.2d 778, 781 (Tex. Comm'n App. 1928, holding approved) (explaining that grant of oil and gas in deed "necessarily includes all gas whether from an oil well or not, and whether such gas contains oil or not"); *Livingston Oil Corp. v. Waggoner*, 273 S.W. 903, 906 (Tex. App.—Amarillo 1925, writ ref'd) (explaining that "casing-head gas" is a constituent element of oil).

A search of other jurisdictions reveals that one court has addressed precisely the question now before us and held that the words oil and gas include products in both refined and natural states. In *Alexander v. Buckeye Pipe Line Co.*, 274 N.W.2d 146, 151 (Ohio 1978), the Supreme Court of Ohio held that a pipeline company was not limited in the types of petroleum products it could transport through a pipeline when the original 1911 right-of-way permitted the transport of "oil and gas." *See id*. In *Alexander*, the right-of-way agreements executed in 1911 and 1947 allowed transportation of "oil" and "gas," and like TLC the property owners argued that these terms limited transportation to crude oil and natural gas, but excluded fuel oil, gas oil, propane and butane, or other gasoline products. *Id*. The Supreme Court of Ohio first concluded that the terms oil and gas as used in the easements were not ambiguous. *Id*. The court then examined definitions of oil and gas from the 1927 Webster's New International Dictionary. *Id*. (citing Webster's New Int'l Dictionary (1 Ed. 1927), which defined "oil" as "(a)ny of a large class of unctuous combustible substances which are liquid or at least easily liquefiable on warming and soluble in ether, but not in water" and "gas" as "any gas or gaseous mixture with the exception of atmospheric air; specif.: . . . b. Any combustible gaseous mixture used for illuminating or as a fuel"). Applying the terms' generally accepted and ordinary meaning, the court held:

It is clear that at the time of the execution of the 1911 right-of-way agreement, the words "oil" and "gas" included products in both the refined and natural states. A restriction of these terms could easily have been achieved by use of a qualifying adjective such as "crude" or "natural." Because the parties executing this agreement did not choose to qualify the terms of "oil" and "gas," we must therefore assume that they intended no restrictive meaning.

*Id.* TLC advances the same arguments that the *Alexander* court rejected. We reject them as well.

We find the reasoning of these cases instructive and, based on the ordinary meaning of oil and gas discussed above, hold that ExxonMobil did not exceed its rights under the 1919 easement by transporting the refined products gasoline and diesel through the pipeline. Thus, the trial court correctly granted summary judgment in ExxonMobil's favor on all of TLC's claims.

## C.    TLC's Alternative Analytical Framework

TLC suggests a different "decision tree" applies here, one that requires us to ignore the ordinary meaning of oil and gas as reflected in secondary sources such as dictionaries. The first prong of TLC's argument rests on its interpretation of *Epps v. Fowler*, 351 S.W.3d 862, 866 (Tex. 2011). In *Epps*, the Supreme Court of Texas considered the meaning of the phrase "prevailing party," which was used (but undefined) in an earnest money contract. *Id.* at 864-65. The court acknowledged the long-standing rule discussed above that when a contract leaves a term undefined, courts presume parties "intended its plain, generally accepted meaning," often determined by consulting dictionaries. *Id*. at 866. The court, however, found instructive federal cases construing the phrase prevailing party. *Id*. at 866-68 (discussing cases). The federal cases cited by the court considered the meaning of prevailing party as that phrase was used (but undefined) in federal statutes. *Id*. at 866, 867 (citing 42 U.S.C. § 3613(c)(2) and 42 U.S.C. § 12205). In dissent, several

9

justices preferred dictionaries over federal cases to ascertain the ordinary meaning of prevailing party because federal cases evaluated congressional policy choices inherent in using the phrase in federal statutes. *Id*. at 872-73 (Hecht, J., dissenting, joined by Medina and Johnson, J.J.).

Based on *Epps*, TLC contends that if contemporaneous statutes or case law define a disputed contract term then that definition controls and courts may not consider the term's ordinary and generally understood meaning as reflected in secondary sources. TLC reads *Epps* as mandating this approach when the disputed terms are "legal-usage" terms, as "oil" and "gas" are claimed to be.

We disagree with TLC's characterization of *Epps*. First, although the *Epps* court considered how federal courts have interpreted the phrase prevailing party based on its use in federal statutes, the statutes did not define the phrase and the court did not state that any federal case law provided a controlling definition. The federal cases cited by the *Epps* court evaluated the ordinary meaning of prevailing party,[4] and the court considered those federal cases instructive, not controlling. *Id*. at 866. *Epps* does not support TLC's proposed framework because the phrase there at issue was not subject to a controlling statutory or jurisprudential definition and the court did not purport to apply one.

Additionally, TLC says oil and gas are legal-usage terms, and *Epps* establishes that statutory or decisional definitions control over ordinary meaning when such terms are at issue. "Prevailing party" may be a legal-usage term, but the *Epps* court nonetheless examined its plain and ordinary meaning. *See id*. at 866 n.5. Regardless, we believe the terms oil and gas are not legal-usage terms in the same sense as prevailing party was in *Epps*, but that they have a common, generally accepted

---

[4] *Epps*, 351 S.W.3d at 866 n.5 ("We see no error, however, in looking to cases considering the plain meaning of the term prevailing party.").

understanding and usage now and in 1919 that can be discerned from secondary sources, as discussed above.[5] To the extent that the terms oil or gas have a special meaning in the oil and gas industry, they "are to be interpreted as usually understood by persons in the business to which they relate, unless there is evidence that the words were used in a different sense." *Exxon Corp.*, 348 S.W.3d at 211. *But see Marcus Cable*, 90 S.W.3d at 701 (citing Restatement (Third) of Property (Servitudes) § 4.1 cmt. d for the proposition that easement "language should be interpreted to accord with the meaning an ordinary purchaser would ascribe to it"). Contrary to TLC's argument, *Epps* forecloses neither inquiry into an undefined contractual term's ordinary meaning nor reference to secondary sources such as dictionaries to ascertain it.

Limiting our definitional authority only to case law and statutes, as TLC says we must, works in its favor only if those primary sources support TLC's preferred definitions. TLC argues that Texas case law and statutes have determined the instant question and provide a definite and controlling meaning of "oil." TLC suggests that Texas judicial opinions have "always defined the term 'oil' to include only crude products." TLC cites a single 1928 decision, *Magnolia Petroleum Co. v. Connellee*, 11 S.W.2d 158, 159-60 (Tex. Comm'n App. 1928, judgm't adopted), and relies on the following quote from *Magnolia*:

> At the time of the execution of the oil and gas lease in question, the subject-matter dealt with by the parties was a common one. Oil, or crude petroleum, casinghead gas, or gas coming from an oil well, and dry gas, or gas from a well producing gas only, were well-known terms, and had acquired a definite, fixed, and popular meaning.

---

[5] *See, e.g.*, *Broswood Oil Co. v. Sand Springs Home*, 62 P.2d 1004, 1006 (Okla. 1936) (considering "oil" a common-usage term).

11

*Id.* at 159. *Magnolia* involved a dispute over compensation due under a lease for gasoline manufactured from casinghead gas. *Id.* The lease in question provided for varied compensation in specified amounts for "all oil produced," each well producing "gas only," "casinghead gas" for each well, and all "other minerals." *Id.* The claimants argued that casinghead gas was "oil" within the meaning of the lease and sought extra royalties. *Id.* The court disagreed based on the lease language, which specifically differentiated between oil, gas, casinghead gas, and other minerals, for royalty and compensation purposes. *Id.* at 159-60. The court stated that the parties specified in the lease that casinghead gas was to be compensated in a particular way, and to compensate for casinghead gas as oil would result in re-writing the contract. *Id.* *Magnolia* does not support TLC's position that, as a universal proposition in Texas law, oil means only crude petroleum and nothing else.

TLC also cites statutes that it says show the parties to the present easement must have intended oil to mean only crude petroleum. TLC relies on 1920s taxation statutes that differentiated between the terms "oil" and "gasoline" for tax purposes, as well as 1930s conservation statutes that likewise distinguished "oil" and "gasoline." *See* Act of June 2, 1923, 38th Leg., 2nd C.S., ch. 45, § 1, 1923 Tex. Gen. Laws 98, 99 (repealed 1933, 1959); Act of June 14, 1923, 38th Leg., 3rd C.S., ch. 5, § 10, 1923 Tex. Gen. Laws 158, 160 (repealed 1931, 1933, 1959); Act of Nov. 12, 1932, 42nd Leg., 4th C.S., ch. 2, § 10, 1932 tex. Gen. Laws 3, 8 (repealed 1977). Citing *City of Houston v. Williams*, 353 S.W.3d 128, 141 (Tex. 2011), and *Amarillo Oil Co. v. Energy-Agri Prods., Inc.*, 794 S.W.2d 20, 22 (Tex. 1990), TLC asserts that laws like these "which subsist at the time and place of the making of a contract form a part of it, as if they were expressly referred to or incorporated in its terms." But *Williams* and *Amarillo Oil Company* involved statutes peculiarly relevant to the issue at hand. *See Williams*, 353 S.W.3d at 141 (observing that relevant statutes can

12

form part of an employment contract). The statutes TLC cites, in contrast, define the words "oil" and "gasoline" only "as used in this law," or for purposes specific to the legislation.[6] Those statutory definitions do not apply to pipeline easements, and TLC does not explain why the parties would have operated under a different impression. Moreover, the statutes TLC cites did not exist in 1919 and otherwise lack contemporaneous connection to the easement. For instance, we do not agree with TLC that the parties to the 1919 easement could have intended a definition of oil or gas the legislature did not adopt until 1932 and only then for reasons unrelated to pipeline transportation of oil or gas.

In sum, even presuming *Epps* required us to apply a controlling definition of oil from contemporaneous statutes or case law, the primary sources TLC cites do not supply a controlling definition. For the foregoing reasons, the trial court correctly granted summary judgment in ExxonMobil's favor. We overrule TLC's sole appellate issue.

## Conclusion

The trial court's judgment is affirmed.

/s/      Kevin Jewell
Justice

Panel consists of Justices Christopher, Jewell, and Hassan.

---

[6] Legislative definitions are policy-driven matters. *See, e.g., King Street Patriots v. Tex. Democratic Party*, 521 S.W.3d 729, 744 (Tex. 2017); *Epps*, 351 S.W.3d at 873 (Hecht, J., dissenting).